THE STATE v. McKEAN.

1. **Criminal law:** ACCOMPLICE: DETECTIVE. A detective who enters into communication with criminals without any felonious intent, but for the purpose of discovering and making known their secret designs and crimes and acts throughout with this original purpose, is not to be regarded as an accomplice.

2. —— The question whether he was so acting is one of fact for the jury.

*Appeal from Fremont District Court.*

WEDNESDAY, APRIL 23.

THE defendant was indicted, tried and found guilty of the crime of grand larceny — horse-steàling. His motion for a new trial was overruled and he was duly sentenced. The further necessary facts relating to the points ruled are stated in the opinion. The defendant appeals.

*J. N. Cornish* and *A. R. Anderson* for the appellant.

*M. E. Cutts*, attorney-general, for the State.

COLE, J. — Upon the trial of the defendant there were but three witnesses introduced. The first, Meeks, testified that he was told by a third person, whose name he gives, that such person and the defendant wanted him to go into horse-stealing business with them; that he agreed to do so, and then told certain other persons of it; these persons said for him to go ahead and they would pay him well if he would go on and detect the men; he said he was a detective and would do it. This witness then states the circumstances of the larceny, the defendant being present, and where the horses were sold by him, the defendant not being present or receiving any of the proceeds, except for the saddles, which were his; a part of the proceeds were paid over to others of the company. The next witness testifies that he was one of the committee that

employed the witness who had just testified, and agreed to pay him well for it, and that the witness had told them what he would do, and had afterward detailed the facts to the committee just as he had now testified.    The last witness was the owner of one of the horses stolen, had missed him and afterward found him in Kansas, just as the witness first testifying had told him.

The court gave to the jury, among other instructions, the following:  "8th. If you find from the evidence that the witness, Meeks, went into an arrangement with the defendant and others to steal the horse in question, and did assist in taking said horse, whether or not he is an accomplice in the crime, if any has been committed, will depend whether, at the time he took the horse, he took it with felonious intent, that is, with the intent to appropriate the horse to his own use and to deprive the owner of the use thereof.   9th. If at the time of the taking he was actuated by or possessed of such felonious intent, he is then to be regarded as an accomplice; but on the other hand, if you are satisfied from the evidence, that Meeks intendedf rom the beginning to act the part of a detective to ferret out and make known the crime and secret frauds of the defendant and others, then he is not to be regarded as an accomplice. This question of whether Meeks was an accomplice or a detective is important, and must be by you determined, in view of the next instruction which I shall give you.    It is a question of fact which you are to determine from the evidence. 10th. If you find, under the instructions given above, that the witness Meeks was an accomplice, the laws of this State direct that a conviction cannot be had upon the testimony of an accomplice alone, unless such testimony is corroborated by such other testimony as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.    But this rule of evidence does not apply if you find that Meeks was not an accomplice but a detective."

The precise point of objection to these instructions, as we understand it, is, that the court did not instruct that the wit-

ness, Meeks, was an accomplice, as a matter of law, whether he was acting feloniously or as a detective.

The authorities upon this question are few; indeed there is but one case we have found, in which the point was directly ruled. That case is *Rex* v. *Despard*, 28 Howell's St. Trials, 346 (*i. e.* 498). The defendant was tried before Lord ELLENBOROUGH, Baron THOMSON and Justices LA BLANC and CHAMBER for high treason; the trial occurred in February, 1803 (43 Geo. III). On the trial, one Thomas Windsor testified that he had received from one of the defendant's associates some printed cards which were received and sworn to by the adherents by reading the affidavit on it and kissing it; that he had done so, and had delivered one to Mr. Bownas, an army agent, from whom he received advice as to the conduct he should hold with the persons in the conspiracy, and that he followed such advice. His testimony was very important and full. Mr. Bownas testified that he received the card from Windsor and gave him advice and directions how to act. After the testimony was closed and the arguments of counsel concluded, Lord ELLENBOROUGH, in the course of a most elaborate and extended " summing up," and just after speaking of accomplices, used the following language : " But there is another class of persons which cannot properly be considered as coming within the description, or as partaking of the criminal contamination of accomplices; I mean persons entering into communication with the conspirators with an original purpose of discovering their secret designs, and disclosing them for the benefit of the public. The existence of such original purpose on their part is best evinced by a conduct which precludes them from ever wavering in or swerving from the discharge of their duty, if they might otherwise be disposed so to do ; as in the case of Windsor who bound himself to his duty by an early communication to Bownas, and received from him directions as to the steps which he should afterward pursue, if he entered into and continued in the apparent prosecution of the purposes of the conspiracy ; with this view and object he is not an accomplice, although, per

haps, a great degree of objection or disfavor may attach to him on other grounds, for certainly no person of very delicate feelings (however necessary it may be in some cases) would choose to go on from day to day, apparently forwarding the purposes of a conspiracy, in order that he might afterward disclose it and bring the parties concerned in it to justice; but still, whatever may be the merit or demerit of this species of conduct on other grounds, it is not taking the fact as Windsor has stated it, the case of an accomplice."

In the text-books on evidence, we find either literal extracts from this charge of Lord ELLENBOROUGH, as in vol. 1, Phil. on Ev., § 3, ch. 6, p. 118 (vol. 3, 4th Am. ed., 1859); or a statement of the rule in substantially his language, as in vol. 1, Greenl on Ev., § 383. The case of *Rex* v. *Despard* is the case referred to by all text-writers. In the case of *Commonwealth* v. *Downing*, 4 Gray, 29, which was a prosecution for the unlawful sale of intoxicating liquor, and where the witness testified to facts constituting the offense, and that he bought the liquor for the express purpose of prosecuting the defendant for the sale, the defendant asked the court to instruct the jury, as matter of law, "that a witness who would come into court and testify that he had purchased and procured another person to commit a crime, for the purpose of prosecuting the person so hired and procured to offend, was not a credible witness, and the jury ought not to found a conviction upon such testimony." This was refused and the court instructed that "it would be competent for them to convict the defendant upon this testimony if they believed it to be true, and if they further believed that the allegations of the complaint had been proved beyond a reasonable doubt; that it sometimes became necessary, in order to detect offenders, to match cunning with cunning, and accomplish by artifice what could not otherwise be consummated; and mentioned as familiar examples the efforts made to detect horse thieves, counterfeiters, incendiaries, and the like." The defendant was found guilty, and on appeal, the supreme court held that "the witness was not an accomplice. This point was settled

in *Commonwealth* v. *Williard*, 22 Pick. 476. The comments of the presiding judge upon the weight to be given to testimony are not matter of legal exceptions. But we do not wish to be understood as expressing any concurrence with the remarks of the presiding judge. We think he might well have instructed the jury that such testimony was to be received with the greatest caution and distrust."

In the case under consideration, the persons to whom the witness made the communications of his purpose to act the detective were not officers of law or charged with any public duty to detect offenders. In this respect the case differs from *Rex* v. *Despard, supra*. But this difference, perhaps, under our form of government and *regime* would not be sufficient to defeat the application of the rule. The court left the credibility of the witness and the weight to be given to his testimony entirely to the consideration of the jury. Of these they were the proper judges. We do not see how we can interfere with the action of either the court or jury.

After the jury returned their verdict, a motion was made to set it aside, on the ground that after the jury retired to their room, one of their number separated himself and went to a saloon and bought intoxicating liquor and took it to the jury room, where he and others drank of it. The affidavits of five witnesses were produced that as they severally believed, they saw the juror go after the liquor. One juror, and the bailiff in charge of the jury, file affidavits positively denying any separation of the juror from the others, and also denying as positively, that any intoxicating liquor was either drank or in the jury room. These are all the affidavits. The affidavit of the alleged absenting juror was not taken. These affidavits present a question of fact, upon which the court below found against the defendant. We cannot properly interfere with that finding; if it is not in accord with the weight of the testimony contained in the affidavits, it surely is not so manifestly against it as to justify our reversal.

Affirmed.