STATE OF IOWA, Appellee, v. PETE NORMAN, Appellant.

INDICTMENT AND INFORMATION: Assault With Intent to Rob—
1  Improper Allegations.  An indictment for assault with intent to rob need not and should not charge (1) that defendant actually *attempted* to rob prosecutor, or (2). that prosecutor actually had on his person some named thing capable of being stolen, or (3) that defendant intended to steal some particular thing.

CRIMINAL LAW: Admissions—Admissibility.  Incriminating admis-
2  sions made by the accused out of court are admissible for the purpose of supplementing evidence of other incriminating circumstances.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

DECEMBER 21, 1920.

DEFENDANT appeals from the verdict and judgment against him on a charge of assault with intent to rob.—*Affirmed.*

*S. B. Allen,* for appellant.

*H. M. Havner,* Attorney General, *B. J. Powers,* Assistant Attorney General, and *A. G. Rippey,* County Attorney, for appellee.

ARTHUR, J.—The appellant, Pete Norman, and Jim Dunnegan, Margaret McAtee, and Marie Bergman, were indicted jointly by the grand jury of Polk County for the crime of assault with intent to rob Fred Erisman. A separate trial of Pete Norman was had, and he was found guilty, and sentenced for an indeterminate period of five years at the Reformatory at Anamosa.

On the trial, the State introduced evidence tending to show that the defendants, the four persons jointly indicted, had been associating together,—had been together considerably,—for several days before the alleged assault with intent to commit robbery occurred, which was on July 7, 1919; that these four

persons had arranged that Jim Dunnegan was to hold up Eris-
man; that they had planned to rob Erisman; that, on the eve-
ning of July 7, 1919, about 6:30 o'clock or 7:00 o'clock, Mar-
garet McAtee and Marie Bergman were together on Locust
Street in the city of Des Moines, near Third and Fourth Streets,
and there they met Fred Erisman; that Margaret McAtee met
Erisman, and introduced him to Marie Bergman, and the three
walked west to a point somewhere between Twelfth and Fif-
teenth Streets on Grand Avenue, and there met Pete Norman;
and from there, the four walked in a southwesterly direction
toward the pumping station of the Des Moines Waterworks; and
from there they walked across to the railroad track, and on south
of the waterworks pumping station; that Pete Norman and
Marie Bergman walked together, and Margaret McAtee and
Fred Erisman were together; that Fred Erisman had been in the
army, and had just received his discharge, a few hours before
he met with these defendants; and that Erisman had to be at
the depot, as he was to leave Des Moines on a train that went out
at 10:30; that the party spent some time about an old sawmill,
south of the waterworks; that Erisman, having to leave at 10:30,
started back along the road that they had come over, in company
with Margaret McAtee, Pete Norman and Marie Bergman fol-
lowing them, a short distance away; that Erisman had only
proceeded a short way when they reached a spot where weeds
were growing on each side of the road, and some man jumped
out and commanded Erisman to throw up his hands; that Eris-
man did not throw up his hands, but moved toward his assail-
ant, who was Jim Dunnegan, and grappled with him; that, as
Erisman moved toward Dunnegan, a shot was fired, and Pete
Norman ran up to where the encounter was taking place, and
three other shots were fired; that the flash of a gun was seen
from the hand of Pete Norman,—a gun itself was not seen in
the hand of Norman, but the gun flash was seen to come from
the hand of Norman.

Marie Bergman testified that a gun was in Pete Norman's
hand; that it was dark, and she could not see the gun, but she
saw the flash of a gun coming from his hand; that previously
during this same day, Norman had in his possession two guns,
which were seen by her, and that she had them in her possession

for a time, and gave them back to Norman; that Norman had told her that one of the guns was out of repair, and would not shoot.

Erisman's testimony was to the effect that the shooting was done by Jim Dunnegan.

Two members of the Des Moines police force testified that Pete Norman admitted in their presence that he shot Erisman.

Appellant took the stand, and denied having anything to do with the shooting.

An examination and discussion of the indictment and the evidence to determine the sufficiency of the charge and the character and sufficiency of the evidence to sustain the verdict will dispose of the material questions involved in the case and raised by the assignment of errors.

Counsel for appellant strenuously assails the indictment on the ground that "the indictment is not sufficient to charge the crime of assault with intent to rob." Counsel urges "that the

1. Indictment and informa-tion: assault with intent to rob: improper allegations.

indictment is bad, for the reason that it does not state that Pete Norman attempted to commit the crime of robbery on Fred Erisman, nor does it state that the said Fred Erisman had anything to steal, nor does it state that Pete Norman intended to steal, take, and carry away anything."

Counsel's position seems to be that the crime of robbery should have been defined in the indictment, for he argues:

"And it will be observed in the present indictment that not a word is said as to what constituted robbery."

It may be remarked here that a definition of the crime of robbery is found in the court's instructions to the jury, and that is the proper place for it to appear.

The two material matters, outside of venue, involved in the charge under consideration, are the making of assault, and the intent with which the assault was made. This indictment clearly states the manner of making the assault and the means by which it is made, and clearly and sufficiently charges the purpose of the assault. Nothing further is required in an indictment for assault with intent to rob. The intent with which the assault is made is the gravamen of the offense. In charging the crime of assault with intent to commit a felony, such as

robbery, it is not necessary or proper to charge intent and facts which would make out the ultimate offense of robbery. Indeed, that would be a fictitious charge. If such facts existed, the charge would be of robbery itself, and not assault with intent to rob. The indictment is not vulnerable to the assignment against it. The indictment is sufficient. *State v. Newberry,* 26 Iowa 467; *State v. Jennings,* 79 Iowa 513; *State v. Mecum,* 95 Iowa 433; *State v. Hall,* 168 Iowa 221; *State v. Rayburn,* 170 Iowa 514; 4 Ruling Case Law 436.

Appellant complains that the testimony of Newell and Chamberlain, police officers, of admissions claimed by them to have been made by Norman in their presence, to them, was not competent evidence for the purpose of proving 2. CRIMINAL LAW: admissions: admissibility. the crime, and was not competent evidence for any purpose; but that, at most, it could only be competent for the purpose of connecting the accused with the offense. It is true that defendant could not be convicted solely on his own admissions, made out of court, but such admissions are not depended upon in this case to supply the only testimony. There is other testimony tending to show the same facts contained in the admissions. The receiving of the testimony of admissions seems to have been well guarded, it appearing that the admissions were voluntarily made, and not influenced by hope or fear.

Appellant insists that the evidence is insufficient to show intent to rob. It is elementary that the intent may be gathered from the whole case,—from all the facts and circumstances shown on the trial of the case. The question of intent was so submitted to the jury by proper instructions.

We have examined the entire evidence, the rulings of the court, and the instructions. It would serve no good purpose to set out the evidence here. We find no error in the record. The instructions were as favorable to defendant as he could properly ask. Indeed, we think the court might properly have presented to the jury, by an instruction, the presumption arising from flight. It appears from the evidence that the four persons, the two men and two women, who foregathered prior to the holdup, and also met afterwards and talked the affair over, all fled from the state.

We find no reason to disturb the verdict of the jury, and the judgment thereon. The case is—*Affirmed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.