STATE OF IOWA, appellee, v. STEVEN WAYNE SCHRECK, appellant.

No. 51656.

(Reported in 137 N.W.2d 914)

NOVEMBER 16, 1965.

Anthony M. Critelli, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, Ray Fenton, County Attorney, and James D. McKeon, Assistant County Attorney, all of Des Moines, for appellee.

BECKER, J.—Defendant was charged by indictment with the crime of breaking and entering with intent to commit larceny. A trial jury found him guilty. He assigns two errors: failure to instruct the jury on the necessity for corroboration of an accomplice, and admission of evidence beyond that claimed to have been limited by stipulation.

Immediately prior to July 1, 1964, Mr. and Mrs. Richard Paul were in the process of moving into a home located at 1217 East 27th Street in Des Moines. The front door was barred and the rear door locked. They had moved belongings into the building and onto the porch, but had not occupied the house. On July 1 they returned, found the front door broken into, the rear door open, their belongings disturbed and many articles missing. They notified police and identified their property after its recovery. Several articles were produced in court and identified as part of the property taken from the house, including a stereo record player, typewriter, sewing machine, a bow, quiver and arrows, hair dryer and a purse. None of these articles was ever offered or received in evidence.

Betty Barnes was the principal witness for the State. She testified that defendant had been her boy friend for four or five months prior to July 1, 1964. They had been living together at Ronald Hartman's apartment for some time prior to June 30, 1964, although she was married at the time and had not yet received a divorce. She told of going to the East 27th Street address at about two a.m. on July 1 with defendant. Witness knew that defendant's mother had formerly lived at that address as witness had lived next door for a while. She had previously been in the house but not with defendant. Defendant went into the house through the front door and she entered through the back. Defendant decided what they were going to take. Betty Barnes helped carry it out. They took the property back to the Hartman apartment. She understood that Ronnie Hartman was going to sell some of it. During all of this time Mrs. Barnes states that she thought this property belonged to defendant's mother and nothing occurred that made her think they might be stealing this property.

The bow and arrows were not taken on this nocturnal July 1 visit. Mrs. Barnes stated that those articles were taken before (when they were taken does not appear), she thought they belonged to Steve Schreck, defendant. She sold the bow and arrows to her brother for nine dollars. Her mother paid for them.

Mrs. Jordon, mother of Betty Barnes, said she bought the bow and arrows from defendant with Mrs. Barnes acting as an

intermediary. She later turned the set over to the police. Two police officers testified; one told of the broken condition of the front door of the pilfered residence; the other told of recovering the articles in question from Ronald Hartman. There were other items recovered that were not put in evidence. A Donald Blachley testified of loaning his car to one Tom Pinegar and seeing a bow and arrow set in it when the car was returned. He did not connect defendant with the car nor could he identify the bow and arrows in question as the set he saw in his car.

There was evidence that the jury could find that Betty Barnes was 19 years old, formerly had lived in Peoria and Chicago, Illinois, as well as Des Moines, had formerly been at Mitchellville Training School for Girls, had been living with defendant in an apartment with Ronald Hartman and Sharon Grant who also were not married to each other at that time. Sharon Grant had a baby. Mrs. Barnes understood that some of the articles were to be sold by Hartman to take care of the baby. Mrs. Barnes could not remember having seen any of the articles in question when she had previously visited this home. Nor had she ever known defendant to be interested in archery or own an archery set.

There was other testimony which defendant claims, with some justification, casts doubt on Betty Barnes' assertion that she did not know they were stealing this property when she helped carry it away.

Defendant did not put on any evidence. He did ask for an instruction defining an accomplice and instructing the jury as to the law requiring corroboration of the testimony of an accomplice. The court refused the instruction and did not cover the subject in its instructions as given. Defendant contends that this refusal was error.

I. A witness is an accomplice if he could be indicted and convicted on the same crime. State v. Anderson, 240 Iowa 1090, 38 N.W.2d 662. "* * * all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried, and punished as principals." Section 688.1, Code, 1962.

"Corroboration of accomplice. A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof." Section 782.5, Code, 1962.

The foregoing section has been the subject of many pronouncements by this court. As early as 1873 the question of whether or not a witness was an accomplice was held to be properly left to jury determination under appropriate instructions (witness said to be acting as a detective), State v. McKean, 36 Iowa 343, 14 Am. Rep. 530.

More recently we have said "while such an instruction [on corroboration] might well be given it is not reversible error to fail to instruct upon the requirement of corroboration of the testimony of an accomplice, contained in section 782.5, where as here no such instruction is requested, there is ample corroboration and it does not appear as a matter of law that any witness was an accomplice." State v. Anderson, supra, at page 1098.

Here there was a requested instruction in substantially correct form. It called the attention of the court to the matter within the rule announced in State v. Rowe, 238 Iowa 237, 247, 26 N.W.2d 422, 427.

The State points to the recovery of the goods from Ronald Hartman and the participation of defendant in the sale of the bow and arrows to Mrs. Jordon as sufficient corroboration. While this evidence may be sufficient to sustain a jury verdict of guilty after proper submission, it was not sufficient to remove the matter from jury consideration in the first instance.

"The question of who are accomplices is one of law for the court where the facts as to the witness' participation are clear and undisputed; when such facts are disputed or susceptible of different inferences, the question is one of fact for the jury." 23 C. J. S., Criminal Law, section 797, page 22. See also extended annotation at 19 A. L. R.2d 1352.

The record is susceptible of different inferences. An instruction defining an accomplice and stating the applicable law of corroboration should have been given.

II.   Defendant's second assignment of error is more tenuous.  Trial commenced on October 14, 1964.  We assume that some reasonable notice of trial date had been given.  On October 13 defendant filed motion for bill of particulars.  On the morning of the trial State and defendant entered into a stipulation which was dictated into the record, reading in part as follows:

"* * * The State agreed * * * the Minutes of the indictment appear to present two separate occasions during which this defendant it is claimed entered the property at 1217 East 27th; once in the company of Tom Pinegar and once in the company of Betty Barnes; let the record show at this time that the State offers to prove and limits its case in chief to that occurrence which the State is informed and believes to have taken place between 2:00 and 4:00 o'clock A.M. on the first (1st) day of July, 1964, during which time the defendant was accompanied by one Betty Barnes, as mentioned in the minutes of the indictment, * * *."

On opening statement when it appeared that the State intended to go into the evidence surrounding the bow and arrow set, defendant strenuously objected on the ground that the State had limited its proof to July 1, 1964, between two and four o'clock a.m.  The court held in effect that the State had limited its charge to the time specified but this did not limit its proof of surrounding circumstances, both before and after the time charged.  The evidence was then introduced, defendant objecting on appropriate occasions on that ground.

We agree with the trial court's ruling.  Opposing sides obviously put different interpretations on the stipulation.  Defendant filed his motion for a bill of particulars just before trial and then accepted a stipulation as dictated.  Since this matter must be retried, we suggest that defendant will be able to make such record as he desires by timely request for ruling on the motion for bill of particulars or by timely filing a new motion to like effect.

We have recently held that under section 773.5 the motion for a bill of particulars is addressed to the sound discretion of the trial court.  State v. Shephard, 255 Iowa 1218, 124 N.W.2d 712.

Because of our holding in Division I hereof, we find that the motion for a new trial should have been sustained on ground two of the motion.—Reversed and remanded.

All JUSTICES concur.