STATE OF IOWA, appellee, v. IRVIN JOHNSON, appellant.

No. 52207.

(Reported in 152 N.W.2d 426)

JULY 11, 1967.

Rothschild & Nadler and Zimmerman, Zimmerman & Pesch, by Carl H. Pesch, all of Waterloo, for appellant.

Richard C. Turner, Attorney General, David A. Elderkin, Assistant Attorney General, D. Quinn Martin, County Attorney, and L. Don Snow, Assistant County Attorney, for appellee.

SNELL, J.—Defendant has appealed from judgment following conviction of sodomy (fellatio). The sufficiency of the evidence to sustain a conviction if admissible and believed by the jury is not challenged. We have reviewed the printed record and the trial transcript. We will refrain from discussion of unnecessary details.

The principal witness was the victim of the crime. His name was Lyle Schrader, a 20-year-old male, referred to by other wit-

nesses as "the boy" or "the kid." For convenience we will refer to him as Lyle. From the witness stand Lyle testified that defendant and two others made him the victim of sodomy per os. At the time all were inmates in Black Hawk County jail.

I. Defendant, appellant, argues that the trial court erred in allowing an incompetent witness to testify over defendant's objection. Lyle, the complaining witness, had at sometime prior thereto been a patient in the Mental Health Institute in Independence. At the time of trial he was a patient in Woodward State Hospital and School. Whether he was there as a voluntary or committed patient does not appear.

Prior to trial counsel for defendant moved for an order for psychiatric examination of Lyle in Black Hawk County. An order was made and examination made. By letter the doctor reported to the judge. We quote excerpts from the letter:

"At the time of the interview, this young man, rather thin, poorly dressed, poorly groomed, in fairly good contact with environment, appeared to be cooperative and respectful. * * * His emotional responses as described before were superficial, immature, and the patient appeared to be rather depressed. He did not show any signs of delusional or hallucinatory experiences. * * * He was fairly well oriented in all spheres. His memory for recent and remote events was fair. His insight was poor. His judgment was poor. Consequently, we agree with the diagnosis of 'Mental Deficiency, Mild' previously formulated by other workers, and we feel that this boy is at the present time, because of his inadequate insight and poor judgment, incompetent to manage his own affairs, and unable to adequately testify in Court."

When called and sworn as a witness at the trial Lyle was first examined on voir dire by defendant's counsel, the court again by defendant's counsel and by counsel for the State. His examination showed a limited or lack of understanding of many words but the court overruled an objection to his competency. We quote the concluding part of his voir dire examination:

"By the Court:

"Q. Let me ask you this, Mr. Schrader, do you understand

what it means to promise to do something, if you promise to do something? A. Yeah.

"Q. Do you know the difference between telling the truth and telling a lie? A. Yes.

"Q. Would you understand that if you promised to tell the truth you should tell the truth rather than tell a lie about something or to make up a story? A. It's better to tell the truth.

"Q. When you take an oath, which is what you did when you raised your right hand, you say you solemnly swear that the testimony you are about to give will be the truth. A. Yes.

"Q. That means you promise to tell the truth? A. Right.

"Q. And you think that you would keep that promise? A. Yes.

"Mr. Frerichs: May I ask one more question, Judge?

"The Court: Yes.

"Q. In connection with this telling the truth, did the County Attorney tell you how to answer these questions when you were talking to him? A. Yeah.

"Mr. Frerichs: Your Honor, I would submit to the Court and object to the introduction of this testimony on the basis that this witness is incompetent to testify, and any answer that he has given showing his competency has obviously been coached into him prior to this hearing.

"Mr. Snow: If we might ask a few questions also along this same line.

"The Court: I will reserve ruling. You may ask some questions.

"Q. Mr. Schrader, you talked with myself prior to coming in here today, didn't you? A. Yeah.

"Q. Did you talk to anyone else? A. Yes.

"Q. Who? A. Him.

"Q. The gentleman who was just questioning you? A. Yeah.

"Q. Now in the course of my conversation with you this afternoon, did I tell you to say anything? A. Yeah.

"Q. What did I tell you to say? A. You told me to tell the truth and not to lie about it.

"Mr. Snow: That's all I have.

"The Court: I will permit the witness to testify. The objection is overruled."

We find no error in this ruling.

Section 622.1, Code of Iowa, provides:

"Witnesses—who competent. Every human being of sufficient capacity to understand the obligation of an oath is a competent witness in all cases, except as otherwise declared."

■ The trial court found the witness competent under the statute. The question of the competency of a witness is for the court. State v. Beckner, 197 Iowa 1252, 198 N.W. 643. Thereafter it was for the jury to determine the weight and credit to be given his testimony and whether his testimony should be believed.

In State v. Patrick, 201 Iowa 368, 207 N.W. 393, a Mongolian type imbecile with a mental age of about 6 years and 8 months was allowed to testify. We said:

"The question, therefore, is whether or not the court erred in permitting her to testify. After having studied the record with care, we are not disposed to disturb the court's ruling in this respect. It is true that her evidence is very unsatisfactory, and in many instances contradictory; but, at the same time, we are not disposed to reverse the court in this respect." (Loc. cit. 371)

See also State v. Alberts, 199 Iowa 815, 202 N.W. 519.

In State v. Meyer, 135 Iowa 507, 113 N.W. 322, 124 Am. St. Rep. 291, 14 Ann. Cas. 1, a six-year-old girl was permitted to testify. She did not know the meaning of the words "oath" or "testimony." We said:

"If, without being familiar with the use of such words, she had an adequate sense of the impropriety of falsehood, she understood the nature of an oath, even though not able to state what those words meant. * * *

"As the law stands, the judge is to pass upon the capacity of the witness to testify, and, save upon a clear abuse of discretion, his decision will not be disturbed on appeal. State v. King, 117 Iowa 487." (Loc. cit. 508 and 509)

■ We note as did the trial court in ruling on defendant's motion for new trial that neither the psychiatrist who wrote the requested letter to the judge nor any other witness was called at

the trial by defendant to attack the competency of the witness.

We find no abuse of the discretion of the trial court in determining the competency of the witness.

■ II. Stanley Wyatt, at the time of the alleged offense an inmate of Black Hawk County jail and at the time of trial brought back from the Federal Correctional Institution, Sandstone, Minnesota, testified for the State. His testimony, on direct, cross, redirect and re-cross-examination, covers nearly 40 pages in the transcript. He testified with but very few objections of any kind to activities in the jail, observations, statements and conversations with Lyle immediately after the alleged offense.

At the close of this witness' testimony defendant moved to strike that portion relating to statements and allegations of the complaining witness because elicited in question and answer form and not within the res gestae rule. The motion was overruled.

The motion to strike was not timely.

We will discuss the res gestae problem and our duty to consider the record without regard to technical defects in subsequent divisions.

III. Defendant made timely objections to the testimony of Arnold Marsh, the night jailer who was on duty at the time of the alleged offense. Defendant objected to testimony as to Lyle's statements as hearsay and beyond the res gestae exception.

Marsh testified that he was called back to the cellblock because of a plugged toilet. Just how soon he was called after the alleged offense does not appear with exactness but it was not long and was probably within a half hour. He found Lyle "lying in his bunk, moaning" and asked him what was wrong. Lyle said he was sick and that he hurt. Lyle would not tell him more and Marsh left. After about 15 minutes Wyatt and Lyle called him back. Lyle wanted to be put "in solitary" so he would "be able to sleep" and would not "be afraid." It was during this 15-minute period that Wyatt had noticed Lyle lying in his bunk "huddled close to the wall and shaking like he was going out of his mind" and said "they would kill him if he told" what had happened.

▮▮▮▮▮▮▮▮ ▮▮▮▮▮

Marsh put Lyle in solitary and noticed blood on his clothing. Marsh asked what happened. Lyle would not talk until Wyatt told him to. He then told what happened. Lyle was then taken to another room where his statement was typed and signed.

▮▮ During cross-examination at the trial Lyle was not too sharp mentally and at times was confused as to time and who among the officers he had talked to. Probably to emphasize Lyle's confusion defendant introduced the statement. The statement made the same charges against defendant as did the trial testimony.

Defendant urges error in overruling objections to this testimony.

Having introduced the written statement defendant is in no position to challenge the fact or substance of Lyle's complaint.

Defendant argues that the statements were not a part of the res gestae in that they were not spontaneous and were elicited by questions.

In Roushar v. Dixon, 231 Iowa 993, 996, 997, 2 N.W.2d 660, cited by appellant, this quotation from 188 Iowa 878, 175 N.W. 81, appears:

▮▮ "We have repeatedly said that the proper test of admissibility of such statements 'is whether they relate to the principal transaction and are explanatory of it, and are made under such circumstances of excitement, still continuing, as to show that they are spontaneous, and not the result of deliberation or design. * * * Within this general rule, the admissibility of the declarations under the circumstances of the particular case is largely within the discretion of the trial judge. The facts and circumstances of no two cases can be precisely alike, and the exact length of time is not mathematically controlling.' "

We adhere to this rule.

In Dedman v. McKinley, 238 Iowa 886, 893, 29 N.W.2d 337, the statements related were made under questioning. We held the testimony competent as part of the res gestae and clearly within the rule.

See also State v. Berry, 241 Iowa 211, 217, 40 N.W.2d 480, and State v. Stafford, 237 Iowa 780, 785, 23 N.W.2d 832.

The admission of the testimony as to Lyle's statements was within the court's discretion and we find no error.

IV. The court's instruction No. 3 properly defined reasonable doubt and defendant took no exception thereto.

Defendant took exception to instruction No. 4 and now claims error in its wording. The instruction was as follows:

"If, upon the evidence in this case, or if because of lack of evidence, you have a reasonable doubt of the defendant's guilt, then it is your duty to find the defendant not guilty.

"The proof is sufficient to sustain a conviction if it establishes the guilt of the defendant to a reasonable and moral certainty; and if under all the instructions given you by the Court you find that the evidence in this case fully and fairly satisfies your minds to a reasonable moral certainty that the defendant is guilty, and you have no doubt of his guilt because of any evidence in the case or any lack of evidence in the case, then you are warranted in returning a verdict that the defendant is guilty."

Defendant challenges the use of the word "reasonable" qualifying "moral certainty."

Section 785.3, Code of Iowa, provides:

"Reasonable doubt. Where there is a reasonable doubt of the defendant being proven to be guilty, he is entitled to an acquittal."

It is quite common practice for a defendant's counsel in a criminal trial to try to enlarge upon this statute by using the words "all reasonable doubt." That such an instruction is properly refused see State v. Seymour, 94 Iowa 699, 708, 63 N.W. 661. That is not what the statute says. The statute does not deal with absolutes. The word used is "reasonable." A reasonable doubt as properly defined in instruction No. 3 to which no exception was taken defines "reasonable doubt" as one that is real, not captious or imaginary, or arising from sympathy; and it must be a doubt which, without being sought after, fairly and naturally arises from all the evidence or lack of evidence.

When the statute uses the word "reasonable" and the word was properly defined we see no reversible error in the use of the same word in the next instruction (No. 4). The use of the word

1216

in instruction No. 4 added nothing to what was already in instruction No. 3. We see no reason why it should have been inserted but we find no reversible error.

In State v. Sauerbry, 233 Iowa 1076, 1083, 10 N.W.2d 544, the instruction used the exact words here complained of, i.e., "reasonable moral certainty." We affirmed.

Section 793.18, Code of Iowa, requires us to examine the record without regard to technical errors or defects which do not affect the substantial rights of the parties. Instruction No. 3 is amplified by instruction No. 4. When read together as they should be and as the jury was instructed to do, they disclose no invasion of the substantial rights of defendant. We find no reversible error therein.

V. The following instruction on guilt by association was requested by defendant:

"Association by the defendant, Irvin Johnson, with alleged accomplices of the crime charged at different times is not sufficient and will not justify the inference that the defendant, Irvin Johnson, committed, counseled, commanded, induced or procured the commission of the crimes herein charged."

The instruction was not given and defendant claims error.

No authorities are cited in support of defendant's contention.

The alleged accomplices were Rodney Morris and Richard Hammond. They were inmates of the jail at the time of the alleged offense. Each was called as a witness in behalf of defendant.

Morris was at the time of trial an inmate at Iowa State Penitentiary. He was there following a plea of guilty to a charge of sodomy arising out of the same incident with Lyle Schrader. On direct examination he testified at considerable length as to activities in the jail other than the alleged offense. He told of "beating up" on Lyle. He explained his plea of guilty as an alternative to a life sentence in Wisconsin as a habitual criminal.

Hammond at the time of trial was facing a charge of sodomy growing out of the same incident. He testified at considerable length as to activities in the jail other than the alleged offense. He also testified that in a conversation with a deputy sheriff he

was told "if I would say Johnson was there I could walk out."

Neither Morris nor Hammond testified that Johnson, defendant herein, "committed, counseled, commanded, induced or procured the commission" of the crime charged.

Having called the witnesses and introduced their testimony as to association defendant was not entitled to a special instruction as to the inferences to be drawn therefrom.

■ VI. Defendant requested a special instruction requiring careful scrutiny and cautious examination of the testimony of Lyle Schrader. The request was refused.

As stated in Division I, supra, Lyle Schrader was at the time of trial a patient in Woodward State Hospital and School. At the request of defendant the court took judicial notice of the type of institution and told the jury: "That simply means that by judicial notice that we take that fact as proved, even though no witnesses stood up here on the witness stand and testified to it, and that is the type of institution that the Woodward State Hospital and School is, the place where Mr. Schrader is an inmate. As set forth in chapter 223 of the Code, that hospital and school is an institution maintained by the State for the training, instruction, care and support of mentally retarded residents of this State, and you can take that as established the same as any sworn testimony in the case."

The jury saw and heard the witness. They knew where he had been and the kind of institution wherein he was presently being treated. The jury was instructed generally on the credibility of the witnesses, the weight to be given to their testimony and on impeachment. The testimony and Lyle's mental condition were thoroughly argued to the jury by defendant's counsel. The jury arguments were reported and appear in full in the transcript.

There was no necessity for a special instruction as requested by defendant and no error in its refusal.

■ VII. Out of the presence of the jury and prior to commencement of trial defendant made a motion to suppress certain evidence set out in the State's amendment to minutes of testimony. The motion was overruled. Defendant claims error.

The evidence sought to be suppressed was never offered at the trial.

If there was error, a point we need not determine, it did not get into the trial and was without prejudice.

■ VIII. Rodney Morris, Richard Hammond, Wayne Tiefel and defendant were all inmates of the jail at the time in question. All testified for defendant. Each in turn related the evening's activities. They told of conversations, games, blows being struck, a bloody nose, bloody clothes and a pants-tearing incident. They described themselves as a playful group "funning" around. The pants-tearing did not involve Lyle Schrader.

Nearly all of this testimony, whether on direct or cross-examination, came in without objection.

After Hammond had testified without objection defendant moved for a mistrial and in the alternative to strike the testimony of Morris and Hammond about the pants-tearing incident as having no probative value but being highly prejudicial.

The motion was not timely and was properly overruled. State v. Woodmansee, 212 Iowa 596, 614, 233 N.W. 725, and Castner v. Wright, 256 Iowa 638, 652, 127 N.W.2d 583 and 128 N.W.2d 885.

In any event the ruling was not reversible error.

The same activities of the evening were discussed by several witnesses including defendant himself without objection. The testimony now urged as error was otherwise disclosed by defendant's witnesses and any error was thereby waived.

■ IX. We have considered the entire record including the transcript. Defendant has had experienced and resourceful counsel throughout. We find no such prejudicial error as to require reversal. The jury found defendant guilty as charged. The verdict had ample support in the evidence.

The case is—Affirmed.

All JUSTICES concur.