**STATE of Iowa, Appellee,**

**v.**

**Robert Dee GILLESPIE, Appellant.**

**No. 52866.**

Supreme Court of Iowa.

Jan. 14, 1969.

Richard C. Turner, Atty. Gen., James R. Martin, Asst. Atty. Gen., and Ray A. Fenton, Polk County Atty., Des Moines, for appellee.

GARFIELD, Chief Justice.

Following indictment defendant Gillespie was tried, found guilty and sentenced for assault with intent to rob Dale G. Craddock, contrary to section 694.7 Code 1966. Defendant has appealed.

The principal errors assigned and argued are: (1) claimed insufficiency of the evidence of guilt; (2) failure to instruct the jury on the defense of alibi; (3) overruling defendant's motion in limine that the state be ordered not to use during the trial certain words thought to be prejudicial to defendant; and (4) refusal of two requested jury instructions. We find no reversible error in any of these assignments.

I. Upon a claim of insufficient evidence of guilt we view the evidence in the light most favorable to the state. Of course it is the jury's function, not ours, to decide disputed fact questions. A verdict of guilty is binding upon us unless we are satisfied it is without substantial support in the evidence or clearly against the weight thereof. State v. Horrell, 260 Iowa 945, 151 N.W.2d 526, 528–529; State v. Stodola, 257 Iowa 863, 865–866, 134 N.W.2d 920, 921 and citations in these opinions.

II. Code section 694.7, so far as applicable, provides: "If any person assault another with intent to * * * rob * * * he shall be imprisoned * * *."

Section 711.1 states: "If any person, with force or violence, or by putting in fear, steal and take from the person of another any property that is the subject of larceny, he is guilty of robbery, * * *."

The two material matters, outside of venue, involved in the charge under consideration are the making of an assault and the intent to rob with which the assault

R. L. Morgan, Des Moines, for appellant.

was made. The intent with which the assault was made is the gravamen of the offense. It was not necessary to allege or prove a completed robbery. State v. Norman, 190 Iowa 472, 474–475, 180 N.W. 151 and citations; State v. Mead, 237 Iowa 475, 478, 22 N.W.2d 222, 223.

III. Craddock, victim of the alleged crime, was the lone attendant at the Mileage service station at 4007 East 14th Street in Des Moines on the night of June 21–22, 1967. He testified that about 1:00 a. m. a two-tone station wagon was parked back of a small cafe at the rear of the station, not on the station property; this was not unusual; he could see the heads of two people in the car but could not identify them; the vehicle remained there an hour or hour and a half; about 2:30 the car was driven onto the station ramp; when Craddock went out to wait on the driver he got out of the car with a gun in his hand, its hammer pulled back, which he stuck in the victim's stomach, forcing him into the station, saying "You know what this is, don't you?"; Craddock, nervous and "real scared," replied that he knew; the witness identified the offender as defendant whom he had seen at the station two or three previous times and also in court and at the police station; defendant ordered him to open the cash register and give him the money; Craddock opened the cash register but told defendant if he wanted the money he'd have to take it; "if they got the cash register and all, I wouldn't have done no arguing;" at this point a young man named Joss, returning from a drive-in "movie", drove into the station with his girl friend to get "gas"; Craddock, still scared, ran out of the station and told Joss he was being robbed; when Craddock pointed at defendant, the latter got into the station wagon and drove away; Craddock observed the license number of the vehicle except for one figure and asked Joss to write it down while the witness called police. This led to defendant's arrest about two hours later at the place he resided.

Craddock positively identified defendant. His description of the clothes defendant was wearing corresponds to that given by other witnesses including a cousin of defendant who testified in his behalf. The customer Joss corroborated much of Craddock's testimony as to what happened while Joss was at the station although he was unable to identify defendant as the man who drove away with his companion in the black and white station wagon.

A Des Moines police officer testified he was called to the Mileage station about 2:30 on the night in question to investigate a reported attempt at armed robbery; he received a description of the suspect and the color and license number of his car; with other officers he located a station wagon fitting the description of the one reportedly driven from the service station and arrested defendant at the same address.

Defendant did not testify. He did offer evidence, later to be considered, bearing on his defense of alibi.

Defendant's brief admits the state has shown an assault but it is said evidence is lacking it was accompanied by an intent to rob. The fact a robbery was not completed does not necessarily negative an intent to rob at the time the assault was made. It may be assumed defendant would have been charged with robbery if the crime had been completed. The jury could properly have found that in all probability robbery would have occurred if a customer had not driven into the station while defendant was there.

■ We think evidence of guilt was clearly sufficient. See State v. Norman, supra, 190 Iowa 472, 474–475, 180 N.W. 151 and citations and State v. Mead, supra, 237 Iowa 475, 478, 22 N.W.2d 222, 223. See also State v. Van, 232 Iowa 34, 36–37, 2 N.W.2d 748, 749.

IV. As provided by Code section 777.18, defendant filed written notice he intended to prove the defense of alibi by several witnesses named therein. He complains

that no instruction was given the jury on the subject.

We note incidentally that before reading them to the jury the court submitted to counsel for both sides its instructions in accordance with rule 196 Rules of Civil Procedure. Defendant timely requested two instructions the refusal of which we later consider. Neither referred to the matter of alibi. Defendant filed no request for an instruction on alibi at any time. After the jury was instructed and retired, defendant's counsel stated he had no objection to the instructions as given except that he then orally requested an additional instruction on alibi on two asserted grounds. Defendant, (as permitted by Code section 787.3(5)), did object to the instructions in his motion for new trial on the ground none was given on alibi.

We prefer not to consider what, if any, effect should be attached to the matters above referred to. In this connection the discussion in State v. Baker, 246 Iowa 215, 227–230, 66 N.W.2d 303, 310–311, may be of interest. We are not persuaded it was reversible error not to instruct the jury on the so-called defense of alibi. The form of such an instruction, if one should have been given, is not before us.

 "An instruction on alibi should not be given when testimony for a defendant seeks merely to controvert the state's evidence. Under a plea of not guilty, a defendant has a right to show not only that he did not commit the act but that he was doing something else at the time. Where an alibi is claimed, a defendant is attempting to prove not only that he was not present but that he was at another place so remote or under such circumstances that he could not have been present. *Unless a defendant is attempting to show the practical impossibility of his presence at the scene of the crime, he is not setting up an alibi * *.* (citations). The question whether an alibi is claimed is not settled by what a defendant contends his defense is. (citation.)" (em-

phasis added) State v. Dunne, 234 Iowa 1185, 1191–1192, 15 N.W.2d 296, 300.

The Dunne opinion is cited on this point with apparent approval in State v. Baker, supra, 246 Iowa 215, 228, 66 N.W.2d 303, 310, and State v. Gilliland, 252 Iowa 664, 671, 108 N.W.2d 74, 78.

We think the testimony offered for defendant was circumstantial evidence he did not commit the crime charged and direct evidence he was doing something else at the time. Of course this was properly to be considered under his plea of not guilty. The evidence referred to, if believed, would not establish the practical impossibility of defendant's presence at the scene of the alleged crime when committed or that he could not have committed it.

As stated at the outset of Division III, supra, the filling station was at 4007 East 14th Street and the crime was committed about 2:30 a. m. Witnesses for defendant testified they saw him in the Golden Nugget Tavern from as early as about 8:00 p. m. to closing time, 2:00 a. m. The male bartender said defendant was not there after closing time. There is no evidence he was in the tavern after that hour. According to defendant's cousin, McFarland, the tavern was at 4039 East 14th Street, evidently in the same block and on the same side of the street as the filling station.

McFarland was a musician at the tavern and his wife was a bartender and "with the band" there. He testified that when he was putting his musical instruments in his car after the tavern closed defendant was outside talking to one Sizemore and was still there when he and his wife drove away "somewhere around 2:20 or 2:30"; he had no watch. Mrs. McFarland fixed the time they left the tavern with their car at 2:35 and her husband said it could have been that late. It is admitted defendant did not accompany the McFarlands from the tavern to their home where all three lived. Mrs. McFarland testified they stop-

ped at a filling station for "gas", soft drinks, candy and cigarettes and went on home where she locked the door and went to bed at 3:00 a. m. Sizemore, with whom the McFarlands said defendant was talking when the witnesses left the Golden Nugget, did not testify nor, as stated, did defendant.

The slight discrepancy in time between the state's testimony as to when the crime was committed (2:30) and Mrs. McFarland's statement it was 2:35 when she and her husband left defendant at the tavern, if believed, does not establish defendant could not have committed the crime. Such a difference between timepieces is not unusual. Defendant, with or without Sizemore, could easily have gone from the area outside the tavern to the filling station nearby in a very few minutes during the time it was not shown the former was elsewhere.

The record does not support defendant's assertion in argument that Craddock testified *defendant* sat in a car watching the oil station an hour or more before the crime was committed. This witness testified a two-tone station wagon "pulled over there in back of the little cafe * * * roughly around 1:00;" because this was a common occurrence he never gave "them" much attention; all he saw was there were two heads in the car. It is apparent defendant's presence in the tavern, if there, until shortly before the time the crime was committed does not establish he could not have committed it.

■ Some of defendant's witnesses testified he was intoxicated at the tavern. Others who were there did not see him drink or could not say he was intoxicated. The male bartender and the woman who owned the place did not refuse to serve him drinks because of his intoxication. The court submitted to the jury the question whether defendant was so far intoxicated as to be incapable of forming the requisite specific intent to rob. The instruction given is not complained of. The matter was properly for the jury and it evidently found

defendant was not so intoxicated as to be incapable of forming the requisite intent. State v. Wilson, 234 Iowa 60, 74–84, 11 N.W.2d 737, 744–749, exhaustively considers the question of intoxication as rebutting a defendant's ability to form the requisite specific intent.

■ The evidence as to defendant's intoxication does not, as he seems to think, support his claim of error in not instructing the jury on the matter of alibi.

■ V. There is no merit in defendant's assigned error in overruling his motion in limine asking that the state be prohibited from using the words "stick-up, hold-up, cash or cash register, robbery," or similar language indicating an intent to rob, for the reason their use would be prejudicial to him.

The claimed fact these words would be prejudicial to defendant is in itself insufficient ground for preventing their use. Much of the testimony offered by an opposing litigant is prejudicial to his adversary in the sense it is unfavorable to the latter. Otherwise there would be little point in offering it.

Further, the requested order would have been too broad. It would have prevented the county attorney from reading the indictment as he or the clerk is required to do by Code section 780.5(1). See in this connection State v. Barton, 258 Iowa 924, 930, 140 N.W.2d 886, 890. It would also have prevented Craddock from testifying defendant ordered him to open the cash register and give him the money and that the witness told the customer Joss in defendant's presence he was being robbed. This was important testimony bearing on the vital issue of defendant's intent and was all received without objection.

We do not find the state used the words "stick-up", "hold-up" or the like during the trial and insofar as the motion in limine referred thereto, overruling it was there-

fore not prejudicial to defendant. State v. Johnson, 260 Iowa 1207, 152 N.W.2d 426, 432

VI. Defendant requested two instructions which would have told the jury it might consider the fact no confession or admission of guilt and no gun were offered in evidence. We find no error in refusing these requests.

 The requests referred to proper matters of argument. Defendant's counsel argued to the jury no confession, admission of guilt or gun was produced and that a reasonable doubt could arise from such lack of evidence. But instructions to the jury should not argue the case for either side or call special attention to matters of evidence thought to be favorable to one party, at least without mention of related matters favorable to his adversary. There is almost no limit to instructions of this kind which might be given if the practice were approved. These precedents, although perhaps not directly in point, lend support to our holding in this division: State v. Dunne, supra, 234 Iowa 1185, 1194–1195, 15 N.W.2d 296, 301; Belle v. Iowa State Highway Commission, 256 Iowa 43, 50–51, 126 N.W.2d 311, 315; Boyer v. Iowa High School Athletic Assn., 260 Iowa 1061, 152 N.W.2d 293, 299, and citations in these opinions.

The Belle opinion cites many decisions for this: "It is well settled that instructions should not unduly emphasize any phase or particular theory of the case."

VII. We have attempted to dispose of all errors assigned and argued. Indeed those considered in Divisions V and VI were not argued and might have been deemed waived by failure to argue them. As stated at the outset we find no reversible error.

We may assume the clerk of the district court of Polk County will certify to the warden of the men's penitentiary the number of days defendant served in the county jail awaiting trial and prior to the filing of this decision, all as provided by section 246.38 Code 1966 as amended by section 2, chapter 422, Laws of the 62nd General Assembly.

Affirmed.

All Justices concur except BECKER, J., who dissents.