**STATE of Iowa, Appellee,**

**v.**

**Richard Wallace HOUSTON, Appellant.**

**No. 54883.**

Supreme Court of Iowa.

April 25, 1973.

Rehearing Denied June 25, 1973.

Everett Meeker, of Livingston, Day, Kehoe, Meeker & Bates, Washington, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., John Baldrige, County Atty., Washington, for appellee.

Heard before MOORE, C. J., and RAWLINGS, REES, REYNOLDSON and HARRIS, JJ.

RAWLINGS, Justice.

Defendant, Richard Wallace Houston (Houston), appeals from judgment on jury verdict finding him guilty of larceny in the nighttime. We affirm.

The offense charged stems from a September 23, 1970, theft of 306 tires from Arco Chemical Company (Arco) located near Ainsworth.

As best determinable from a prolix record this is the basic factual situation presented:

Glenn Bryant, a State's witness, testified he knew nothing of the planned offense but at Houston's request rented two trucks; later went with him to a truck stop, then to where one of the vehicles had "broken down"; helped transfer tires from it to another truck; called in to report one of the rented vehicles had been stolen; first said he had been promised immunity from prosecution but later retracted that statement.

Another prosecution witness was Joseph James, admitted accomplice with Houston in stealing the tires from Arco. He drove the truck which became disabled and later helped transfer the tires from it to another vehicle.

Ralph Murphy also testified for the State. His testimony reveals he and a co-driver, operating a Georgia-Pacific rig the night of the theft, picked up two unknown men at a truck stop near Ainsworth; they rode with him to a place near Davenport where Murphy stopped for repairs; there met three other previously unknown men, including defendant; Murphy was asked to help with their "broken-down" truck and he drove to where it was located; tires therein were then transferred to his Georgia-Pacific rig; he thereupon, by prearrangement and for an agreed price, drove to St. Louis supposedly to there meet the aforesaid five men but they failed to appear; Murphy then realized the tires were stolen; they were subsequently sold by him and his co-driver. This witness also testified he had been neither charged with the instant offense nor promised immunity in exchange for his testimony.

Other relevant facts will be later considered as they relate to issues presented.

In summary the multiple errors asserted by defendant in support of a reversal are, trial court erred in (1) overruling defendant's challenge for cause as to a prospective juror; (2) overruling defendant's motion to strike testimony of State's witnesses Murphy, Bryant and James because they were induced to testify by illegal and unconstitutional promises of immunity; (3) overruling defendant's motion to strike Murphy's pretrial photographic identification of Houston; (4) overruling defendant's motion to strike Murphy's testimony on the ground he was an accomplice; (5) failing to instruct the jury the burden was upon the State to prove Murphy was not an accomplice; and (6) failing to instruct the jury that Murphy and Bryant were accomplices as a matter of law.

Upon the same grounds it is also urged trial court erroneously overruled defense motions for a directed verdict and new trial.

■ I. First to be considered is Houston's contention to the effect his challenge

for cause regarding prospective juror Harold Morgan should have been sustained.

An examination of the record discloses defense counsel, by a series of suggestive and possibly confusing inquiries initially led Morgan into stating (1) it would be difficult for him to return a verdict of not guilty if Houston's picture was on file with the police, and (2) it was doubtful he could disregard the testimony of an accomplice even though not corroborated.

On the other hand this venireman later clearly demonstrated he could base his decision on the evidence presented and would follow instructions given by the court.

The foregoing affords no premise upon which to hold Morgan unquestionably entertained a disqualifying prejudice or preconceived opinion regarding defendant's guilt or innocence.

Additionally, this court has many times held, trial courts are vested with broad discretionary power in acting on challenges as to a juror for cause. See e. g., State v. Kappos, 189 N.W.2d 563, 565–566 (Iowa 1971); State v. Grove, 171 N.W.2d 519, 520 (Iowa 1969). See generally Irvin v. Dowd, 366 U.S. 717, 721–724, 81 S.Ct. 1639, 1642–1644, 6 L.Ed.2d 751 (1961); State v. Square, 257 La. 743, 244 So.2d 200, 225–231 (1971); 47 Am.Jur.2d, Jury, §§ 265–269; 50 C.J.S. Juries §§ 267–270.

We find no reversible abuse of discretion by trial court in overruling defendant's instant juror challenge for cause.

II. Houston's next broad assignment goes to the relationship of State's witnesses Murphy, James and Bryant with the offense here involved.

In that regard defendant initially claims it was incumbent upon the State to prove beyond a reasonable doubt these testifying parties were not accomplices in the stealing of tires from Arco. This contention is without merit.

■ At the threshold defendant, not the State, at all times insisted Murphy, James

and Bryant aided and abetted Houston in stealing the tires from Arco. Resultantly the burden was upon him to so prove by a preponderance of the evidence. See State v. True, 190 N.W.2d 405, 407 (Iowa 1971); 7 Wigmore on Evidence, § 2060(e) at 341 (3d ed. 1940); 1 Underhill's Criminal Evidence, § 175 at 335 (5th ed., Herrick, 1956).

■ An examination of the record discloses, however, trial court instructed the jury it was incumbent upon the State to prove beyond a reasonable doubt Murphy and Bryant were not accomplices. In light of the foregoing this instruction was improper but inured to defendant's benefit so he is not now in a position to effectively complain.

The record also discloses, trial court properly held and advised the jury that James was an accomplice as a matter of law. See State v. Jennings, 195 N.W.2d 351, 357 (Iowa 1972); State v. Schreck, 258 Iowa 218, 222, 137 N.W.2d 914 (1965); 1 Underhill's Criminal Evidence, § 175 at 335 (5th ed., Herrick, 1956).

III. Furthermore, by appropriate instructions, the jury was duly permitted to determine whether Murphy and Bryant were in fact accomplices. See State v. Schreck, supra; State v. Jensen, 289 Minn. 444, 184 N.W.2d 813, 815 (1971); 7 Wigmore on Evidence, § 2060(e) at 341–342 (3d ed. 1940); 1 Underhill's Criminal Evidence, § 175 at 335 (5th ed., Herrick, 1956).

And in response to interrogatories accordingly propounded the jury found these two witnesses did not stand in that position. See generally State v. Barnes, 204 N.W.2d 827, 828–829 (Iowa 1972); State v. Jennings, 195 N.W.2d at 356; State v. Jones, 115 Iowa 113, 115–119, 88 N.W. 196 (1901); 1 Underhill's Criminal Evidence, § 175, n. 8 at 330 (5th ed., Herrick, 1956); 21 Am.Jur.2d, Criminal Law, § 126; 23 C.J.S. Criminal Law § 792.

It therefore follows defendant's assertion that Murphy and Bryant were accomplices is without substance. Thus corroboration as to these witnesses was not required. See State v. Armstrong, 203 N.W.2d 269, 273 (Iowa 1972).

This in turn means testimony by Murphy and Bryant legitimately tended to corroborate that of accomplice James. See State v. Jennings, 195 N.W.2d at 356–357; State v. Bell, 258 Iowa 779, 781–783, 140 N.W.2d 375 (1966). See generally 1 Underhill's Criminal Evidence, §§ 182–185 (5th ed., Herrick, 1956).

IV. Houston next asserts Murphy, Bryant and James were illegally promised "immunity" by the county attorney and this served to disqualify them as witnesses. More specifically defendant contends the county attorney improperly purchased the testimony of these prospective witnesses by promising they would not be prosecuted.

For reasons later disclosed it is unnecessary to here determine the power or authority of a prosecutor, in this jurisdiction, to so bind the State. See generally the Code 1966, Sections 622.14–622.16, 741.4; 1 Underhill's Criminal Evidence, § 180 (5th ed., Herrick, 1956); 21 Am.Jur.2d, Criminal Law, §§ 150–152; Annot., 13 A.L.R.2d 1439. See also 21 Drake L.Rev. 331 (1972).

The aforesaid "purchase of evidence" theory, though novel, is not persuasive. It would more aptly appear that by promise of "immunity", if any, the county attorney merely removed a possible barrier to a willing response on the testimonial call of these three witnesses. See generally 8 Wigmore on Evidence, §§ 2280–2284 (McNaughton Rev.1961). See also Murphy v. Waterfront Com'n of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L. Ed.2d 678 (1964); cf. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L. Ed.2d 212 (1972); Zicarelli v. New Jersey State Com'n of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972).

■ In any event such did not disqualify them from testifying or negate their testimony. See generally Code §§ 622.1–622.3; 2 Wigmore on Evidence, § 580 at 707–708 (3d ed. 1940); 1 Underhill's Criminal Evidence, § 178 (5th ed., Herrick, 1956); Annot., 120 A.L.R. 751.

■ Furthermore it is clearly established an assurance of prosecutorial abstinence, regardless of its effectiveness, goes only to credibility of the promisees. See State v. O'Meara, 190 Iowa 613, 624, 177 N.W. 563 (1920); Burkhalter v. State, 493 S.W.2d 214 (Tex.Cr.App., 1973); 1 Underhill's Criminal Evidence, § 181 (5th ed., Herrick, 1956). See also 21 Drake L.Rev. at 335–337.

Significantly the record unquestionably reveals Murphy was given no assurance of "immunity". Also the defense was permitted to thoroughly cross-examine Murphy, Bryant and James as to any such promises which may have been made to them. See State v. Bell, 258 Iowa at 781–783, 140 N. W.2d at 377–378. Thus nondisclosure of evidence is not here involved.

Moreover the jury was given this pertinent instruction:

"It appears without controversy that the witnesses, Joseph C. James and Glenn A. Bryant, were willing to waive their constitutional rights against self-incrimination and testify in this case because of a promise of immunity they had received from the County Attorney. It is proper for you to consider such fact together with all the other facts and circumstances disclosed by the evidence in determining what weight and credibility, if any, you give to the testimony of each of said witnesses."

By virtue of the foregoing it is apparent defendant here again pursues a futile course.

V. Another error urged by Houston relates, as aforesaid, to photographic identification of him by Murphy, apparently on

or about October 6, 1970, at Crossett, Arkansas.

More specifically defendant claims this identifying process was induced and so fraught with suggestiveness that misidentification resulted. He thereupon asserts the photo identification was so tainted his motion to strike same should have been sustained. Our review is confined to the issue thus presented.

At the threshold this contention encounters a well-established procedural obstacle.

■ Ten witnesses testified between the time Murphy gave and completed the aforesaid identification testimony, absent any contemporaneous objection, and defendant's aforesaid motion. With regard thereto this court has repeatedly held a motion to strike or withdraw evidence is not timely where it comes without prior objection and the grounds of such motion should have been apparent before it was made. See e. g., State v. Bruno, 204 N.W.2d 879, 887 (Iowa 1973); State v. Boose, 202 N.W.2d 368, 369 (Iowa 1972); State v. Johnson, 260 Iowa 1207, 1218, 152 N.W.2d 426 (1967). See also 1 Wigmore on Evidence, § 18 (3d ed. 1940); McCormick on Evidence, § 52 at 115–116 (1954); 53 Am.Jur., Trial, § 153.

VI. By virtue of Code § 793.18 we deem it appropriate, however, to evaluate the error instantly urged. See State v. Masters, 171 N.W.2d 255, 258 (Iowa 1969). This in turn necessitates further reference to the attendant factual situation.

Murphy testified he first met, saw and talked with Houston at an I–80 truck stop near Walcott. Also at defendant's request, and accompanied by him, Murphy drove to where the disabled truck was located. There the tires in that vehicle were transferred to the Murphy operated Georgia-Pacific rig.

In relevant part the record further discloses Murphy testified: "The Defendant, Mr. Richard Houston, was there. I recognize him. He was at the Iowa 80 truck stop."

And, with regard to the photographic identification of defendant by Murphy this is his record testimony on cross-examination:

"I saw a photograph of the defendant between the time of the incident and yesterday. It was in the Sheriff's office in Ashley County, Arkansas. This was a few days after (Washington County, Iowa) Sheriff Snyder was down to talk to me. I was requested by the Sheriff's department to come look at some photographs. I went to (Ashley County, Arkansas) Sheriff Sparks office. He showed me a photograph of the Defendant and some other photographs, seven altogether. I recognized four. There was nobody else present when I looked at the photographs except the Sheriff."

The pictures referred to above were, with other exhibits, introduced in evidence.

Defense counsel was also properly permitted to extensively cross-examine all witnesses connected with the instant matter.

■ An independent review of the total circumstances leads us to conclude no showing is made upon which to hold the instantly controverted photographic identification was so· impermissibly induced or suggestive as to create a very substantial likelihood of irreparable misidentification. See Simmons v. United States, 390 U.S. 377, 382–386, 88 S.Ct. 967, 970–972, 19 L. Ed.2d 1247 (1968); State v. Walker, 181 N.W.2d 143, 144–145 (Iowa 1970). See also Royce v. Moore, 469 F.2d 808, 812–813 (1st Cir. 1972); Dearinger v. United States, 468 F.2d 1032, 1035–1036 (9th Cir. 1972); Drewry v. Commonwealth, 213 Va. 186, 191 S.E.2d 178, 181–182 (1972).

■ There is additionally clear and convincing evidence the in-court-identification of Houston by Murphy had an independent origin. That is to say, it was based on Murphy's observation of Houston at the

I–80 truck stop, during the subsequent trip, and while the tires were transferred from a disabled vehicle to the Georgia-Pacific truck. See State v. Jones, 193 N.W.2d 509, 512 (Iowa 1972), and citations.

From this it follows defendant's assault upon his identification by Murphy is of no force or effect.

VII. As previously stated it is also contended, upon all the grounds above set forth, trial court erroneously overruled defendant's motion for a directed verdict.

This motion was made after the State had rested but not renewed at close of all evidence. It must therefore be deemed waived. See State v. Tokatlian, 203 N.W. 2d 116, 119 (Iowa 1972).

VIII. Houston's final asserted error is, trial court erred in overruling his new trial motion. Since this assignment is predicated on claims heretofore resolved adverse to defendant no further discussion is necessary.

We conclude defendant was accorded a fair trial.

Affirmed.