STATE OF IOWA, appellee, v. EVA JUNE GILL, appellant.

No. 51833.

Henry T. McKnight, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett and Robert D. Bernstein, Assistant Attorneys General, Ray Fenton, County Attorney, and James McKeon, Assistant County Attorney, all for appellee.

SNELL, J.—Defendant, Eva June Gill, has appealed from her conviction and judgment of imprisonment for the offense of robbery. The record abounds in disclosures of irrelevant matters prejudicial to defendant.

It is the statutory duty of the attorney general to prosecute and defend all causes in the supreme court in which the State is a party or interested. Section 13.2(1), Code of Iowa. He may appoint assistant attorneys general who act under his direction. Section 13.4, Code of Iowa. He may in appropriate cases appear before other tribunals. Section 13.2(2), Code of Iowa. Cosson v. Bradshaw, 160 Iowa 296, 141 N.W. 1062, Ann. Cas. 1915D 157

It is the duty of the county attorney to appear for the State in the courts of his county when the State is a party. Section 336.2, Code of Iowa.

Ordinarily, a criminal case is under the control of the county attorney until the supreme court acquires jurisdiction, after which it is under the sole control of the attorney general. State v. Fleming, 13 Iowa 443.

On appeal in performance of the statutory duty the attorney general and his assistants must rely on the record made in the trial court. To their embarrassment they are sometimes faced with situations for which they are in no way responsible. Such is the case here.

Defendant was charged with aiding and abetting Vickie Myers who admitted robbing a Dairy Queen business at gunpoint

about 4 p.m. Except for meager corroboration of doubtful probative value the State's case depended on the testimony of Vickie Myers. She was an admitted felon, a three-time loser to the law, a liar, a prostitute, a sodomist, and a lesbianist. She had previously given the police a written statement exonerating defendant.

Defendant was released from jail on bond before Vickie Myers was released. This was displeasing to Vickie. She testified:

"I wrote Eva to the effect that she had to get some money and get me out of the County Jail; that I never went around the City Drug much and when I was practicing prostitution I did not go to the City Drug but I hung around the Lux Hotel; that I practiced prostitution for about three weeks; that I asked Eva to raise $500 to help get me out because her friends had helped get her out and I thought that she had plenty of time to get me out; that I was not angry at her but I was disappointed.

"I felt like I had been put in the trip bag because it was forcing me to cop out on someone and this just completely goes against the criminal code * * *; if two people are guilty for a crime, they should both be punished, I think."

In spite of her admitted record she denied experience in crime. She was possibly referring to her lack of success.

She also testified that the assistant county attorney took her to lunch the day she testified. This may have appeared necessary to keep the witness available but the procedure was a little unusual.

At defendant's trial she repudiated her previous statement exonerating defendant. She testified that she and defendant had discussed a possible robbery for about two weeks, that defendant bought a starter pistol that was used in the robbery and drove the get-away car. Defendant freely admitted her ownership of the car, that she had the pistol in her car and had loaned her car to Vickie Myers but denied any knowledge of or participation in the robbery. She offered evidence of alibi.

Much of the testimony related to matters other than robbery. A detailed recitation of the testimony would serve no useful purpose. Counsel for defendant referred to it as "distasteful." A brief summary will suffice.

Defendant and Vickie Myers had known each other, in and out of jail, for about two years. They had been in the women's reformatory together. The assistant county attorney repeatedly and consistently, over objections and on his statement to the court that he would "chain it up", injected into the record matters that were highly prejudicial but very remote and in no way connected with the offense for which defendant was on trial. When the objections were sustained the inquiry was pursued in slightly different form. When the objections were overruled on the promise of later connection the connection never developed.

■ Testimony as to lesbianism among inmates at the reformatory nearly two years before the offense charged and also later but long prior to the robbery in question, the way of life and record of associates and witnesses, and suggested prostitution as a way to earn money for a bail bond was offered and at times admitted. Testimony about defendant's husband indicating that he was in jail, and unrelated habits and activities related by the State's witness was before the jury. Such matters might prove many things but had nothing to do with the offense charged. Such evidence could only have been injected into the record to prejudice the jury against defendant.

■ I. In State v. Vance, 119 Iowa 685, at 686, 687, 94 N.W. 204 (subsequently overruled on another point), we said:

"The state cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for separate punishment or as aiding the proofs that he is guilty of the crime charged. The exceptions to the rule may be classified as follows: Evidence as to other offenses is competent to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, and (5) the identity of the person charged with the commission of the crime on trial."

See also State v. McCutchan, 219 Iowa 1029, 1047, 259 N.W. 23; State v. Brown, 253 Iowa 658, 667, 113 N.W.2d 286; State v. Schlak, 253 Iowa 113, 115, 116, 111 N.W.2d 289.

The testimony injected into the trial of activities unrelated to robbery did not come within any rule of admissibility.

II. We have all too frequently been called upon to reverse cases because prosecuting attorneys persist in asking improper questions in spite of the fact that the court has ruled against him. In State v. Poston, 199 Iowa 1073, 1075, 203 N.W. 257, we said:

"We are unable to understand why prosecuting attorneys persist in thus infracting the well established rules of practice. This court has repeatedly warned prosecutors about these dangers, and it seems rather strange that, in spite of these warnings, prosecutors persist in this practice. However, we presume that the field is so attractive that they cannot refrain from browsing therein, if possible. The result, under such circumstances, is always the same as it is in this case. It puts into the record a reversible error, and necessitates on our part the reversal of the case, * * *."

In State v. Comes, 245 Iowa 485, 493, 62 N.W.2d 753, the prosecutor persisted in improper questions to discredit the defendant. We said:

"Defendant may be an unworthy person in other ways than were charged in this indictment. He may for some reason have been under police surveillance in 1939. He may have had check troubles at some stage of his career. He may have been conducting a business under a trade name not properly registered or have answered inaccurately as to his having been registered at a hotel or having lived at a certain address at a given time.

"But these matters had no place in this case. He was not on trial for them. They could serve only to prejudice the jury."

We can think of nothing more appropriate and germane to the duties of a prosecutor and the rights of a defendant than the words of Mr. Justice Thompson speaking for the court in State v. Tolson, 248 Iowa 733, 734, 735, 82 N.W.2d 105:

"It is sometimes said that error 'crept' into the trial of a lawsuit. Not so in the case at bar. It marched in like an army with banners, and trumpets. It was escorted, and emphasized, and aggravated by the attorney for the State.

"A prosecuting attorney should use his best efforts to represent the State, vigorously and forcefully, in presenting its case within the bounds of proper legal procedure. He owes a second

duty, of no less importance, to see that the accused has a fair trial. He is an officer of the court and must observe the requirements of due process of law. We have commented upon this duty many times and have been compelled to reverse many cases because it was disregarded. [Citations] The rights of the State and of the defendant are equal in that each is entitled to a fair trial under established rules. This should be kept in mind by counsel representing the State at every stage of the proceedings; but too often, as in the instant case, it is not.

"Our primary concern here is whether the defendant had a fair trial, as measured by proper legal procedures. The crime charged against the defendant is a detestable one, which should be promptly punished in accordance with the prescribed penalties when, but only when, the accused has been determined to be guilty after he has had his day in court. But he has not had this day when the record shows such repeated interjection of prejudicial error through the misconduct of the prosecuting attorney as does the one before us. We have no alternative but to reverse."

The weight and credit to be given the testimony including the probative value of the corroboration of an admitted accomplice was for the jury and not for us.

In oral argument counsel for defendant asked only for reversal and remand so that defendant might have a fair trial.

The case is reversed and remanded.—Reversed and remanded.

All JUSTICES concur.