**H. K. PORTER COMPANY, Inc.**

v.

**UNITED SAW, FILE AND STEEL PRODUCTS WORKERS OF AMERICA FEDERAL LABOR UNION NO. 22254, AFL–CIO, Appellant.**

No. 17283.

United States Court of Appeals Third Circuit.

Argued Nov. 21, 1968.

Decided Jan. 10, 1969.

Rehearing Denied Feb. 20, 1969.

---

Louis H. Wilderman, Wilderman, Markowitz & Kirschner, Philadelphia, Pa. (Richard H. Markowitz, Richard Kirschner, Philadelphia, Pa., on the brief), for appellant.

Edward W. Madeira, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa. (J. Roger Williams, Jr., Paul R. Obert, Pittsburgh, Pa., on the brief), for appellee.

## OPINION OF THE COURT

Before GANEY, FREEDMAN and SEITZ, Circuit Judges.

FREEDMAN, Circuit Judge.

This is an appeal by a labor union from the district court's vacation of portions of an arbitrator's award on the ground that they were beyond his authority.

The controversy has had a long history and was before us at an earlier stage.

In 1955 H. K. Porter Company, Inc., acquired the plant of Henry Disston &

Sons, Inc., in Philadelphia, which it continued to operate as a Division until sometime in 1959 when it announced its intention to move a large part of its operations to Danville, Virginia. The union, which had a collective bargaining agreement with the company, filed grievance claims relating to pension rights and severance pay on behalf of the employees whose positions were terminated by the closing of the plant. These grievances were not settled and the union demanded arbitration which the company rejected on the ground that the dispute was not within the arbitration provisions of the collective bargaining agreement.[1] In an action by the union under § 301 of the Labor Management Relations Act (29 U.S.C. § 185), the district court held the issues arbitrable (United Saw, File and Steel Products Workers of America, Federal Labor Union No. 22254, AFL–CIO v. H. K. Porter Co., 190 F.Supp. 407 (E.D.Pa. 1960)) and ordered the company to submit to arbitration "subject to the provisions of the Collective Bargaining Agreement, the grievances with respect to pensions and severance pay insofar as such grievances arise under the provisions of the Collective Bargaining Agreement * * *."[2]

Following this order the parties chose W. Roy Buckwalter as the impartial arbitrator. On August 17, 1962, Buckwalter issued an award rejecting the union's claim for severance pay and ruling in favor of the company on some pension items and in favor of the union on others. The district court ordered enforcement of the award after the company attacked it and the union counterclaimed for its enforcement. H. K. Porter Co., Inc. v. United Saw, File and Steel Products Workers, 217 F.Supp. 161 (E.D.Pa. 1963).

On appeal we held that the arbitrator was not limited exclusively to the provisions of the collective bargaining agreement but was entitled to consider also the pension practices which the parties had followed under the pension plan and that this justified paragraph 1 of Buckwalter's award which held:

"1. Each employee who, at the time he was terminated, had completed twenty-five years or more of service, but had not yet reached age sixty-five, shall be paid a full pension.

"The formula for payment to be worked out by H. K. Porter Company and the Union.

"Each terminated employee shall receive a $1,000 non-contributory life insurance policy * * *."

We also held, however, that neither the language of the agreement nor the practice of the parties justified paragraph 2 of the award which held:

"2. Each employee, who at the time he was terminated had reached age sixty-five, but had not completed twenty-five years of service shall be paid a pro rata pension based on an equitable formula to be worked out" by the parties and shall also receive a $1,000 non-contributory life insurance policy.[3]

1. Section III–A of the contract provides that "[s]hould differences arise between the Company and the Union * * * as to the meaning and application of the provisions of this Agreement, or should any grievance arise between the parties hereto, there shall be no stoppage of work, strike or lockout on account of such differences, but an earnest and sincere effort shall be made by the parties hereto to settle such differences * * *". in accordance with specified grievance procedures.

Sections III–B and IV–A provide that grievances not settled under these procedures can be appealed to an Impartial Chairman chosen by mutual agreement of the parties.

Section XX–B, establishing a pension committee comprised of management and union representatives, provides: "Problems of eligibility within the terms of this pension plan that cannot be solved by this Pension Committee shall be the only pension problems subject to arbitration. * * *"

2. The district court entered its definitive order on April 11, 1961, after an appeal in which we settled the form of order.

3. THE BUCKWALTER AWARD
"PENSIONS: The Arbitrator rules that:

We therefore affirmed the judgment of the district court sustaining paragraph 1 of Buckwalter's award and reversed its judgment as to paragraph 2 of Buckwalter's award, and remanded with instructions to enter judgment in favor of the company on paragraph 2. H. K. Porter Co., Inc. v. United Saw, File and Steel Products Workers, 333 F. 2d 596 (3 Cir. 1964).

On remand the parties submitted a form of judgment which they had jointly drafted and which the court approved and entered on December 7, 1964. It enforced paragraph 1 and vacated and declared void and unenforceable paragraph 2 of the Buckwalter award. Paragraph 4 of the judgment then provided:

"4. This Court shall retain jurisdiction of the parties to and subject matter of this action under Section 301 of the Labor Management Relations Act of 1947. In the event differences or disputes arise between the parties as to the interpretation and application and/or the method of enforcement, including the formula for payment, of the terms of paragraph 1 of the arbitration award as quoted above, then either party shall apply to this Court under the above caption for such action as it deems appropriate."

The differences which then arose between the parties regarding paragraph 1 of the Buckwalter award were not brought to the district court as the judgment provided, but instead were submitted to a new arbitrator, Donald A. Crawford. There was no joint written or even oral specification of the issues to be arbitrated nor was there any express statement of the view of either party as to the scope of the arbitration at the time Crawford was selected. During the course of the hearings the company claimed that the only question for the arbitrator was the determination of the specific employees who were eligible for pensions under paragraph 1 of the Buckwalter award, and it objected to the decision of any problems beyond eligibility. The union on the other hand claimed that Crawford was to decide whatever differences had arisen between the parties regarding paragraph 1 of the Buckwalter award.

On January 21, 1966, after having heard the claims of the parties Crawford advised them it was his opinion that employees under paragraph 1 of Buckwalter's award were not required to wait until they reached age sixty-five in order to receive their pensions. He believed that with this informal knowledge of his decision on the threshold issue the parties would be able to resolve the remaining issues. He therefore referred these issues back to the parties, retaining jurisdiction in the event they could not resolve them. When the parties later informed him that they were unable to resolve their differences he conducted a further hearing and then filed his award.

Crawford's award, in addition to dealing with certain specified employees in paragraphs 6 and 8 which we here omit, declared in effect:

1. Employees who had served for twenty-five years were entitled to pay-

---

"1. Each employee who, at the time he was terminated, had completed twenty-five years or more of service, but had not yet reached age sixty-five, shall be paid a full pension.

"The formula for payment to be worked out by H. K. Porter Company and the Union.

"Each terminated employee shall receive a $1,000 non-contributory life insurance policy as provided for in Section XIX–A.

"2. Each employee, who at the time he was terminated had reached age sixty-five, but had not completed twenty-five years of service shall be paid a pro rata pension based on an equitable formula to be worked out by H. K. Porter Company and the Union.

"Each terminated employee shall receive a $1,000 non-contributory life insurance policy as provided for in Section XIX–A.

"3. The request for pensions for employees who, at their termination, had not yet reached age sixty-five and who had not put in twenty-five years of service is denied.

"SEVERANCE PAY:

"The Union's request for severance pay is denied."

ment of full pensions beginning on the date of termination of their employment, without waiting until they attained age sixty-five.

2. Pensions should be calculated without actuarial reduction, and the minimum guaranteed pension provision of the contract should not be applied.

3. The company should pay past due pension payments in a lump sum with four per cent interest retroactive to the date of termination of employment.

4. In the event of the death of an employee with twenty-five years of service before reaching age sixty-five, his estate would be entitled to full pension payments from the date of termination of his employment to the date of his death.

5. Employees with twenty-four years of service were entitled to pensions effective one year from the time of termination of their employment.

\* \* \* \* \* \*

7. Every employee eligible for pensions was also entitled to a $1,000 noncontributory life insurance policy as of the first of the month following his becoming eligible for pension, and in the event of his death the company should pay to his estate the benefits due under the policy.

\* \* \* \* \* \*

9. Funding and joint administration of the pension plan was not required.

The company moved to vacate portions of the Crawford award as outside the scope of his authority, contrary to the provisions of the collective bargaining agreement, and inconsistent with the prior decisions in the case. The union filed a cross-motion to enforce the award in full. The district court held that the collective bargaining agreement limited the arbitration of pension questions to eligibility and that this clearly did not include the time and method of payment of pension benefits. The court

also held that while the issue of payments to men with twenty-four years of service was an arbitrable eligibility issue, the award could not be justified under our prior decision that the twenty-five years of service requirement was mandatory. The district court therefore vacated substantially all of the Crawford award, and ordered enforcement of its remaining provisions.[4] H. K. Porter Co., Inc. v. United Saw, File and Steel Products Workers, 283 F.Supp. 739 (E. D.Pa.1968). It is from this order that the union has taken the present appeal.

The district court recognized that an exclusion from the arbitration clause of a collective bargaining agreement must clearly appear. It believed, however, that § XX-B of the agreement which provides that "[p]roblems of eligibility within the terms of this pension plan \* \* \* shall be the only pension problems subject to arbitration \* \* \*", limited the arbitration of any pension grievances to issues of eligibility, and that neither the agreement nor the subsequent conduct of the parties was enough to make arbitrable the issue of the time and method of payment of pension benefits.

Section XX-B must be construed in the context of the unanticipated supervening act of the company in closing the plant which made it impossible for some of the employees to continue in service until attaining the age of sixty-five. As the agreement had been written, in the normal course of events an employee who had served for twenty-five years but had not yet reached the age of sixty-five could continue in his employment until both conditions were fulfilled, and would thereupon be "eligible for pension". Such eligibility automatically carried with it the right to immediate pension payments and there was no distinction in time between eligibility for pension and payment of pension benefits.

4. It vacated paragraph 1 in its entirety; paragraph 2 in so far as it pertained to calculation of payment; paragraphs 3, 4 and 5 in their entirety; paragraph 6 in so far as it prescribed payment of pensions before the age of sixty-five; paragraph 7 in so far as it pertained to employees who had died before reaching age sixty-five.

Buckwalter, in awarding full pensions to employees who had served for twenty-five years but had not attained age sixty-five, held that they became eligible because the removal of the plant made impossible their continued service until they reached age sixty-five. Since the premature termination of their employment displaced the requirement that the employees must reach age sixty-five, the standard of eligibility was now altered and with it the time of accrual of the right to payment. The two questions, when an employee was entitled to pension and when the right to payment of pension benefits accrued, are at least so interwoven in the circumstances of this case that we cannot say that § XX-B alone requires their elimination from the scope of arbitration.

■ Moreover, even if § XX-B were construed to exclude the time and method of payment of pensions, it is not alone enough to prevent recognition of the subsequent arrangements which the parties made.

■ The Buckwalter award in providing that the "formula for payment" should be worked out between the parties had created a new source of dispute between them. It was this dispute which the parties acknowledged would require judicial decision if it was not settled between themselves when they agreed to the form of judgment of December 7, 1966. When they failed to settle the dispute, instead of returning it to the court they submitted it to a fresh arbitration. The provision of the agreement, therefore, cannot be sterilized as if it were untouched by these events. Even if the dispute regarding the effectuation of Buckwalter's award

were not a matter of eligibility which the company was required to arbitrate under § XX-B, nevertheless, it was one which the company had voluntarily brought within the realm of arbitration by agreeing to submit the dispute to Crawford. The resort to an arbitration unrestricted at the outset must be presumed to include the disputes which the parties declared would require resolution by the district court if they were unable to settle them between themselves. It would require an express limitation to exclude from the Crawford arbitration any of these disputes. None was expressed. Indeed, during the course of the arbitration the company acknowledged that in determining the scope of the submission Crawford was entitled to take into consideration the provisions of paragraph 4 of the judgment.[5]

If the authority for Crawford's decision may not be found in the collective bargaining agreement, it was clearly authorized by the definition of the scope of their dispute in paragraph 4 of the judgment which the parties transmuted into an arbitration. Such an agreement is, of course, valid and enforceable. Cf. Anaconda Co. v. Great Falls Mill & Smeltermen's Union No. 16, 402 F.2d 749 (9 Cir. 1968).

■ The circumstances, therefore, support Crawford's conclusion that the company had agreed to have him decide the dispute regarding the time and method of pension payments. The case is clearly distinguishable from Local 719, American Bakery and Confectionery Workers of America, AFL–CIO v. National Biscuit Co., 378 F.2d 918 (3 Cir. 1967), where we held that the union's objection to arbitrability, which it

---

5. "THE ARBITRATOR: My jurisdiction then comes under this court order?

"MR. MADEIRA [Attorney for the company]: Your jurisdiction comes under all the documents.

"THE ARBITRATOR: Under all the documents, including this directive of the court, and at issue here is Paragraph 2; is that correct?

"MR. WILDERMAN [Attorney for the union]: When you say 'under this order,'

you are referring to the order of December 7, 1964, Mr. Crawford?

"THE ARBITRATOR: Yes, Judge Lord's.

*  *  *  *  *

"MR. MADEIRA: My understanding is that that is correct, sir, that your jurisdiction comes from all the documents, and we are particularly concerned with paragraph 2 of Union's Exhibit 1.

"MR. WILDERMAN: Which is the order of December 7, 1964."

had made at the very outset and continued to preserve throughout the process of arbitration, was not lost because of its participation in the arbitration proceeding. Here, instead of an objection at the outset of the arbitration, there was agreement and acquiescence to the arbitration. The company's brief filed with the arbitrator some months after the submission and hearings, in which it maintained that the time and method of payments was not arbitrable under § XX-B, cannot serve as a unilateral revocation of the agreement which both parties had made when they selected Crawford as their arbitrator.

█ If the company is now required to submit to an award which goes beyond the literal meaning of § XX-B, it is because the closing of the plant was an unanticipated event for which the agreement made no provision. The issues which followed from this and the dispute regarding the Buckwalter award were submitted to Crawford without limitation. Where the parties bring to an arbitrator the full range of their dispute and express no reservation in their submission, the broad doctrine which favors the arbitration of labor disputes[6] must be given full scope.

A final issue remains. The district court vacated paragraph 5 of Crawford's award that employees with twenty-four years of service were eligible for full pensions one year after the termination of their employment. This award was based on a provision in § VI-A of the agreement which for purposes of pension and other rights makes employment continuous for one year after service is terminated.[7]

The district court believed the award was contrary to our earlier decision setting aside paragraph 2 of Buckwalter's award of pro rata pensions to employees who, although they had reached age sixty-five, had not completed twenty-five years of service when their employment was terminated. However, in holding that twenty-five years of service was a mandatory requirement we did not deal nor were we presented with the subordinate problem whether employees who had worked for twenty-four years would satisfy the requirement if they added an additional one year of service under the provisions of § VI-A.

The company contends that paragraph 1 of Buckwalter's award declares in effect that only employees who had completed twenty-five years of service at the time their employment was terminated were entitled to pensions. This, it argues, is contradicted by Crawford's award permitting the one year following the termination of employment to be added to twenty-four years of service. Buckwalter, however, nowhere dealt with the effect of § VI-A on twenty-four year service employees. His decision regarding employees who did not need to rely on § VI-A to meet the twenty-five years service requirement does not control cases in which the effect of § VI-A is presented. Indeed, Buckwalter stated in his opinion that the company in explaining its pension policy had made it clear that the twenty-five year service requirement for pensions would be met by employees with twenty-four years of actual service and the additional one year extension under § VI-A.[8] It can hardly

---

6. See, e. g., John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United

Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960).

7. Section VI-A of the contract provides:
"* * * An employe's continuous plant service * * * shall be broken only in the case of:
"* * * 3. One year lapse since date of termination of employment (usually last day worked) * * *."

8. "Mr. Hydrick clearly explained the pension policy which was in effect in 1959

be said, therefore, that Buckwalter had decided in favor of the company an issue which had not been in dispute before him.

The judgment of the district court will be reversed with direction to enter judgment enforcing the Crawford award.

when he informed the Union that the Company would abide by the contract provisions but that it had no intention of altering the existing pension plan. Those who were on pension would continue to receive it, and those eligible for pension within one year of lay-off would receive their pension.

"The Company has, without exception, followed this pension policy." Buckwalter Opinion, p. 8.