**STATE of Iowa, Appellee,**

**v.**

**Curtis Lee REDDING, Appellant.**

**No. 53228.**

Supreme Court of Iowa.

July 24, 1969.

Walter W. Rothschild, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., and Larry Seckington, Asst. Atty. Gen., for appellee.

GARFIELD, Chief Justice.

A jury found Curtis Lee Redding guilty of robbery with aggravation in violation of section 711.2 Code, 1966, in that he robbed Arnold Heasley of approximately $100 while armed with a gun, with intent, if resisted, to kill or maim Heasley. From judgment on the verdict defendant has appealed.

Three alleged errors are assigned. (1) Refusal of defendant's request for a list of police officers who investigated the crime and the nature of the investigation of each. (2) Admitting in evidence what defendant refers to as a "mug shot" of defendant taken at a prior arrest. (3) Admitting in evidence as part of the res gestae a conversation between the victim and an eye witness as to the description of defendant. We consider them in the order stated.

Since sufficiency of the evidence of guilt is not questioned, only limited reference to the facts is deemed necessary at this point.

Heasley was a filling station attendant in Waterloo. The robbery occurred on the night of February 4–5, 1968 about 1:30 or 1:40. Heasley was alone in the station when, according to his testimony, defend-

ant entered with a gun, announced it was a "stickup," demanded the money in the drawer of a desk and left with about $100 in his possession; Heasley was about two feet from the robber and identified defendant as that person; he was a Negro wearing dark clothes and a French beret; about two days later he had an opportunity to recognize defendant at the police station from about 12 photographs shown him, one of which was of defendant.

I. On the day the county attorney's information was filed, defendant's counsel filed a motion asking for a list of police officers involved in the investigation and the nature thereof conducted by each, a copy of any written statements taken by the police from the victim Heasley, and that defendant be permitted to examine a money sack referred to in the minutes of testimony attached to the information.

After arguments on the motion the court denied the first request and two others not referred to supra but granted the last two requests and required the state to furnish the material within two days. It is not claimed the order was not complied with. Denial of only the first request is complained of here.

■ Since trial of the present case we have dealt extensively in State v. Eads, Iowa, 166 N.W.2d 766, 773–775 with the question presented in this first assigned error. While the Eads opinion is too long to review here, nor is that necessary, it fully supports the view that no abuse of discretion appears in denying defendant's first request.

In Eads the trial court required the state to furnish a defendant charged with murder copies of statements made to police by all persons it expected to call as witnesses, also a right to inspect and copy the reports by four named officers concerning their investigation in to the alleged crime. In a review by certiorari of the order, the requirements above referred to were held to be an abuse of discretion.

This is from the Eads opinion (page 774 of 166 N.W.2d): "However, whether condemned as 'mere fishing expeditions,' 'attempts to rifle the prosecutor's file,' or 'requests for the State's work product,' the overwhelming weight of authority is against such disclosure. * * *

"We hold the order requiring the State to produce copies of police reports was an abuse of discretion and that approval of such procedure would unreasonably and unnecessarily impede the investigatory process, thereby depriving the *State* of a fair trial. (numerous citations)"

See also State v. Kelly, 249 Iowa 1219, 1220–1222, 91 N.W.2d 562, 563–564, and State v. Tharp, 258 Iowa 224, 227–230, 138 N.W.2d 78, 80–81, and what is said concerning them in State v. Eads, supra. The Eads opinion says (pages 768, 769 of 166 N.W.2d): "For present purposes we take as established the argument that, in the absence of suppression of evidence favorable to a defendant, states do not violate due process by denying pre-trial discovery. (citations)."

Defendant concedes that under State v. Kelly pretrial discovery may be had in Iowa only for the production of specific documents which are shown to be in existence. His first demand was not of such nature.

Aside from State v. Kelly, the only decision defendant cites is Williams v. Dutton, 5 Cir.Ga., 400 F.2d 797, 800–801, which we do not find contrary to our holding here.

We are also reminded the trial court had considerable discretion under Code section 773.6 to order the county attorney to furnish defendant a bill of particulars of the offense sufficient to enable him to prepare his defense or to give him such information as he is entitled to under the constitution of this state and a supplemental or new bill when the court deems it in the interest of justice. As to this suggestion it is sufficient to say defendant made no request for information under this statute and it was not an abuse of discretion for the court not to invoke section 773.6 on its own motion.

We note that in permitting defendant to examine the money sack referred to in minutes of testimony attached to the information the trial court complied with the pertinent part of State v. Eads, supra, filed nearly a year after the ruling under discussion here. (pages 769, 771 of 166 N.W. 2d).

II. Regarding receipt in evidence of what defendant refers to as a "mug shot" of him, Heasley testified without objection he had an opportunity to recognize defendant again at the police station by means of photographs a few days after the alleged robbery. At this point defendant's counsel said he would like to interpose an objection and to be heard on it in the jury's absence. An extended hearing was then held in the jury's absence. It was brought out by defendant's counsel the state perhaps would show that one to three days after February 5 Heasley identified a mug shot of defendant and indicated to the police this was the man he believed robbed him.

It also appeared at the same hearing that Heasley identified defendant in a police "lineup" on March 1. Later that day a preliminary information was filed in municipal court accusing defendant of the crime of which he was later convicted. Defendant's counsel indicated he would object to offer of the photograph (exhibit D) and evidence of the lineup principally on the ground defendant had no attorney present at either time. The county attorney brought out that defendant had not been arrested or confined on the charge of which he was convicted until the information was filed and the investigation had not reached the accusatory stage at the time defendant was identified by the photographs or in the lineup.

At the conclusion of the above hearing the court ruled the photograph would be received in evidence but evidence as to the lineup would be excluded. The court con-

cluded from the testimony and admissions at the hearing the investigation had not reached the accusatory stage until after Heasley viewed the photographs.

After the jury returned to the court room Heasley testified that two days after the robbery he went to the police station to look at about a dozen mug shots and exhibit D was the photograph of defendant about which he testified. The exhibit was received in evidence over defendant's objection of incompetent, irrelevant, immaterial, highly prejudicial, without probative value and in violation of defendant's rights under the Fifth and Fourteenth Amendments to the Federal Constitution, presumably rights against self-incrimination and to due process of law.

Defendant argues here exhibit D should not have been admitted because the jury would get the impression therefrom he had been in trouble with the police before and so be prejudiced against him in considering his guilt or innocence of the crime charged.

■ It is the general rule that evidence is not receivable of a crime for which defendant is not charged and on trial, but there are well-recognized exceptions to the rule. One exception applies where such evidence tends to identify him as the person who committed the crime charged. State v. Vance, 119 Iowa 685, 687, 94 N.W. 204 (later overruled on another point); State v. Johnson, 221 Iowa 8, 14–16, 264 N.W. 596, 267 N.W. 91; State v. Dunne, 234 Iowa 1185, 1195–1196, 15 N.W.2d 296, 301–302 and citations; State v. Gill, 259 Iowa 142, 145, 143 N.W.2d 331, 333; 29 Am.Jur. 2d, Evidence, § 322.

Identity of defendant as the man who robbed Heasley was very much an issue at the trial. *Defendant's brief calls it the crucial issue.* As stated, Heasley as a witness identified defendant in the court-room as the person who robbed him. Defendant as a witness denied he was ever in the filling station in question except the rest room on a prior occasion, robbed the attendant on February 5 or at any time, and that he ever owned a gun or wore a French beret.

■ Especially since identity of accused was such an important issue, notwithstanding Heasley's in-court identification of defendant as the person who robbed him, it was entirely proper for the state to offer evidence that at a former time the victim also identified defendant as such person. Indeed some evidence of this was received without objection, as stated at the outset of this Division II. Courts and text writers have recognized that the earlier identification has greater probative value than the one made in the court-room.

As held in People v. Gould (Traynor, J.) 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865, 866–867 (1966):

*"Evidence of an extra-judicial identification is admissible, not only to corroborate an identification made at the trial* (citation), *but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached* (citations), *evidence of an extra-judicial identification is admitted regardless of whether the testimonial identification is impeached,* because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. (citations)" (emphasis added)

People v. Purnell, Ill.App., 245 N.E.2d 635 (1969), points out: "A photograph of an accused from which a complainant makes an identification is a proper means of identification and can be properly admitted into evidence. (People v. Maffioli, 406 Ill. 315, 94 N.E.2d 191.)"

State v. Childs, 198 Kan. 4, 422 P.2d 898, 903–905 (1967) fully considers the question presented by defendant's second assignment and cites numerous decisions from

various jurisdictions for this conclusion: "We think the reasoning adopted by the authorities favoring the admission into evidence of the extra-judicial identification of an accused is sound and should be applied where, as in the instant case, prior identification is made from photographs." (page 904 of 422 P.2d.)

4 Wigmore on Evidence, Third Ed., section 1130, pages 208, 210 contains these pertinent excerpts: "Ordinarily, when a witness is asked to *identify* the assailant, or thief, * * * the witness' act of pointing out the accused (or other person), then and there in the court-room, is of little testimonial force. After all that has intervened, it would seldom happen that the witness would not have come to believe in the person's identity. The failure to recognize would tell for the accused; but the affirmative recognition might mean little against him.

" * * * To corroborate the witness, therefore, it is entirely proper * * * to prove that *at a former time*, when the suggestions of others could not have intervened to create a fancied recognition in the witness' mind, he recognized and declared the present accused to be the person. If, moreover (as sometimes is done) the person was then so placed among others that all probability of suggestion (by seeing him handcuffed, for example) is still further removed, the evidence becomes stronger. The typical illustration is that of the identification of an accused person at the time of arrest: * * *

"This is a simple dictate of common sense, and was never doubted in orthodox practice. That some modern Courts are on record for rejecting such evidence is a telling illustration of the power of a technical rule of thumb to paralyze the judicial nerves of natural reasoning."

Wigmore also points out, as does People v. Gould supra, at page 867 of 354 P.2d, it is not necessary to wait until the witness making the in-court identification is impeached before evidence of an earlier extra-judicial identification is properly received.

Defendant contends the prior identification of him could not be made by use of a photograph taken by the local police or testimony concerning it, some of which—as stated—was received without objection. The contention cannot be accepted under the record we have here.

The state made no attempt to show before the jury, except perhaps incidentally, defendant had been arrested, much less convicted, upon any charge other than that now considered. He testified on direct examination by his counsel that on December 18, 1967, "the date of arrest shown on exhibit D, he was arrested for a traffic violation." However, the back of the exhibit lists the charge as delinquency. The state did not attempt to contradict defendant's testimony he had been arrested for a traffic violation when the photo was taken nor was it shown what disposition was made of any charge growing out of it. Defendant also testified on direct examination without dispute he had not previously been arrested except for the traffic violation. He did say, however, also on direct examination, he had been AWOL from the armed services three times.

While there is some lack of uniformity in the decisions on the admissibility of photographs of suspects in possession of the police and testimony concerning them as bearing on the identification of an accused as the one who committed the crime charged, there are many recent decisions which support the trial court's admission of exhibit D under such a record as this.

Colbert v. Commonwealth, Ky., 306 S.W. 2d 825, 828, 71 A.L.R.2d 442, 447–448, and Anno. 449 carefully consider the question. This is from the cited opinion: "It appears that other jurisdictions are about equally divided on the question of competency of testimony by a witness as to his own previous identification of the accused, with perhaps a tendency in the recent cases in favor of admissibility. See Annotation,

70 A.L.R. 910. Wigmore strongly argues in favor of admissibility. Wigmore on Evidence, Third Ed., sec. 1130. Wharton and Underhill also take the view that the evidence is admissible. Wharton on Criminal Evidence, Twelfth Ed., secs. 181, 182; Underhill's Criminal Evidence, Fifth Ed., sec. 127. These authorities and the cases supporting their view, make no distinction between identification through photographs, as in a 'rogues' gallery,' and identification through a police lineup. However, they do point out that the conditions and circumstances under which the identification was made should be fair and be free of influences and suggestions calculated to induce a fancied recognition. * * *

"Without attempting to repeat the reasons relied upon by those authorities who uphold the admissibility of such evidence, we will simply say that we find the reasons to be sound, and we adopt the view that evidence by a witness of his own previous identification of the defendant in a criminal case, under circumstances reasonably free of improper influences, is competent. We think the question should properly be considered one of weight, rather than of competence, and that adequate protection is afforded through the opportunity for cross-examination. To the extent that Griffith v. Commonwealth, 250 Ky. 506, 63 S.W.2d 594, and Keene v. Commonwealth, 307 Ky. 308, 210 S.W.2d 926, express a contrary view, they are overruled.

"We hold that the testimony of the prosecuting witness, concerning his previous identification of the defendant, was competent. * * *

"The appellant voices an objection, on another ground, to the testimony concerning identification of the defendant's picture among a group of pictures shown to the victim at the police station. The objection is, that since it is common knowledge (or at least belief) that the 'rogues' galleries' maintained at police stations are composed of photographs of known criminals, the admission of evidence as to the

defendant's picture being in such a 'rogues' gallery' was in substance the admission of evidence of another, unrelated crime committed by the defendant. *Since we have held that the evidence of identification by photograph was otherwise competent, and since any suggestion from this evidence that the defendant was guilty of other crimes was incidental and remote, we think the evidence was not objectionable on the ground of reference to other possible crimes.* See 20 Am.Jur., Evidence, sec. 311, p. 290; cf. Commonwealth v. Jackson, Ky., 281 S.W.2d 891. In fact, there is authority for the proposition that evidence of other crimes is admissible where it is for the purpose of identification. See 20 Am.Jur., Evidence, sec. 312, p. 292." (emphasis added)

The A.L.R.2d annotation following the report of the Colbert opinion reviews many precedents, largely on an individual basis, following this analysis (page 453 of 71 A.L.R.2d) " * * * the rule now prevailing in most jurisdictions in which the question has been fully considered, subject to the qualifications and exceptions noted, is that the prior identification may be shown by the testimony of the identifier or identifying witness, or by the testimony of the third person to whom or in whose presence the identification was made, where the identifier has testified or is present and available for cross-examination at the trial, not as original, independent, or substantive proof of the identity of the defendant as the guilty party but in corroboration of the testimony of the identifying witness, at the trial, as to the identity of the defendant. As above indicated, however, a contrary rule obtains in some jurisdictions as to some or all of the propositions stated, as hereinafter shown."

See also in support of our holding on defendant's second assigned error Simmons v. United States, 390 U.S. 377, 383–384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States v. Robinson, 7 Cir. Ill., 406 F.2d 64 (1969); People v. Gould, supra, 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d

865, 866–867 (1966); People v. Purnell, supra, Ill.App., 245 N.E.2d 635 (1969); People v. Maffioli, supra, 406 Ill., 315, 94 N.E.2d 191, 195; State v. Childs, supra, 198 Kan. 4, 422 P.2d 898, 903–905 (1967); Commonwealth v. McLellan, 351 Mass. 335, 220 N.E.2d 819 (1966); State v. Owens, 15 Utah 2d 123, 388 P.2d 797 and citations note 1, page 798 (1964). See also citations in State v. Tapia, 79 N.M. 344, 443 P.2d 514, 515 (1968).

We note that Commonwealth v. Mc-Lellan, supra, after citing five precedents as supporting its decision, adds "But see Vaughn v. State, 215 Ind. 142, 19 N.E.2d 239." In Vaughn there was no prior identification of accused by photograph and the only apparent purpose of offering it was to prejudice the jury against him.

The principal decision defendant cites on the point now considered is Commonwealth v. Trowery, 211 Pa.Super. 171, 235 A.2d 171 (1967). An intermediate appellate court there, one judge dissenting, regarded the exhibit received in evidence as clearly prejudicial since it was part of the state police files known as the "rogues' gallery"—it was not from the files of the local police.

No such term as "rogues' gallery" was used by the prosecutor or victim of the crime here. Nor is there any evidence or claim exhibit D came from any prison file or shows any prison record. A different question would be presented if it did. As stated, the undisputed evidence, offered by defendant, is that the photo was taken by the local police following his arrest for a traffic violation and he had never been previously arrested.

Several cases distinguish between photographs obviously taken in prison, thus showing felony convictions, and those taken by local police. See, e. g., United States v. Robinson, supra, 7 Cir. Ill., 406 F.2d 647; People v. Maffioli, supra, 406 Ill. 315, 94 N.E.2d 191, 195; People v. Purnell, supra, Ill.App., 245 N.E.2d 635.

The decisions in Maffioli and Purnell appear from these excerpts from the latter opinion, filed earlier this year:

"The defendant next assigns as error the admission of the police photograph of the defendant bearing the legend, 'Police Department, Maywood, Ill. 3458.' The instant case is readily distinguishable from People v. Williams, 72 Ill.App.2d 96, 218 N.E.2d 771 in which the court held that it was improper to admit a photograph bearing the legend 'Jackson State Prison' since the defendant did not testify and since the photo served to show that the defendant had been convicted of a crime. In the case at bar, the legend complained of does not indicate a conviction of a crime. In People v. Maffioli, supra, the Supreme Court held that admission of photos of the defendant each bearing the legend 'Police Dept., Rockford, Ill., 6874 John Maffioli 8–26–49' was proper *since the photos were not offered into evidence to show an arrest for another offense but were offered for the relevant purpose of identification*. The Maffioli case is controlling in this case, and thus we find the defendant's argument to be without merit." (emphasis added)

We hold here the state's offer of the photograph exhibit D, as part of its main case for the relevant purpose of identification of defendant did not, under the circumstances here, tend to place defendant's character in issue.

The trial court was not requested to instruct the jury on the purpose for which exhibit D was admitted or should be considered. No objection was taken in the trial court, even in defendant's motion for new trial, to the instructions on such ground nor is any such objection made here. It may well be defendant desired no such instruction.

III. We find no merit in defendant's third assigned error in the admission, over his objection as hearsay, of testimony of Westphal in rebuttal as to his con-

versation with Heasley a very few minutes after the robbery.

Westphal testified without objection he was driving past the oil station in question between 1:30 and 1:40 on February 5 when he noticed a Negro suspect leaving the station; witness slowed down to five miles an hour; the suspect was wearing a dark colored beret, dark pants and ¾ length coat; he identified defendant as the person he saw; the person turned and ran between two houses; witness "figured" something was wrong since the station attendant was standing motionless against its inside wall; witness drove around the block and saw the suspect crouched down by the front porch of a big gray duplex; when witness applied his brakes the suspect "took off" across the street; when witness backed his car a shot was fired either at him or in the air; when he looked up he saw the suspect running between houses across the street and turn right and he did not see suspect again; witness rushed into the station to see if the attendant was all right and had a conversation with him. All of the above was received without objection.

Asked what the attendant said, defendant objected as hearsay and the prosecutor stated he felt it was part of the res gestae. The court excused the jury on its own motion, heard what the alleged conversation was and ruled it admissible as part of the res gestae.

The witness then testified before the jury Heasley said he was all right, had called the police and was in the act of calling his boss to report the robbery; the two discussed what the suspect wore; witness asked if he was wearing a beret and Heasley said "yes"; asked if he was wearing a dark ¾ length coat, Heasley said "yes", and dark trousers? and Heasley also said "yes"; the two agreed on a description of the suspect; witness asked if he was probably about five feet eleven or six feet tall and they agreed on that. This is the evidence received over defendant's objection as hearsay. No other objection was interposed.

The principal argument in support of this assigned error is that the statements testified to did not have the spontaneity to qualify as res gestae. We are told Clark v. Van Vleck, 135 Iowa 194, 197–198, 112 N.W. 648, (1907) states the res gestae rule in this state. We find nothing to criticize in what is said there. The opinion recognizes that the fact the declarations are made in response to inquiries and are "self-serving" is not always controlling. It is also said "And as a general rule the admissibility of such evidence lies largely within the discretion of the trial court." Exclusion of the evidence was upheld in the cited case.

In the 62 years since Clark v. Van Vleck was decided we have held several times and it is generally recognized that the trend of the decisions is to extend, rather than narrow, the res gestae doctrine. Roushar v. Dixon, 231 Iowa 993, 997, 2 N.W.2d 660, 662; State v. Stafford, 237 Iowa 780, 785, 23 N.W.2d 832, 835; Bass v. Muenchow, 259 Iowa 1010, 1015, 146 N.W. 2d 923, 926; Gibbs v. Wilmeth, Iowa, 157 N.W.2d 93, 98–99; 29 Am.Jur.2d, Evidence, section 708, page 771; 31A C.J.S. Evidence § 403(1), page 984.

It is axiomatic that the admissibility of statements as part of the res gestae is largely within the discretion of the trial court. Gibbs v. Wilmeth, supra, and citations; State v. Johnson, Iowa, 152 N.W. 2d 426, 430, and citations; 31A C.J.S. Evidence § 403(1), page 983 and Iowa cases cited n. 48. The trial court's rulings on the question are usually, but not always, affirmed on appeal. Bass v. Muenchow, supra, 259 Iowa 1010, 1014, 146 N.W.2d 923, 926 and citations. In Bass the trial court was reversed for excluding the statements.

We have held several times the fact statements are made in response to questions does not render them inadmissible

as part of the res gestae if they are spontaneous and made under the excitement of the principal transaction. Gibbs v. Wilmeth, supra, 157 N.W.2d 93, 99 and citations; State v. Johnson, supra, 152 N.W. 2d 426, 430 and citations. See also Cossette v. Lepp, 38 Wis.2d 392, 157 N.W.2d 629, 631; 31A C.J.S. Evidence § 419 d, page 1036 and citations n. 56.

It is settled the res gestae doctrine applies in both civil and criminal cases. 29 Am.Jur.2d, Evidence, section 708, page 769; 31A C.J.S. Evidence § 403(1), page 985.

We are not persuaded the trial court abused its discretion under the circumstances here in admitting this conversation between Westphal and the victim of the crime. According to his testimony the latter had been robbed of $100 at gunpoint within five minutes or less; he had just notified police and was in the act of notifying his boss when Westphal rushed into the station to see if the attendant was all right; Westphal had just witnessed the suspect escape from the station and a gunshot had been fired at him or into the air; the trial court could properly find both Heasley and Westphal were still acting under continuing excitement of the robbery and there was insufficient time for the former to fabricate or deliberate upon answers to the few questions the latter put to him; the answers generally corroborated testimony each had previously given without objection as to the description and identity of the suspect.

We may note Westphal was cross-examined at some length. In an obvious effort to weaken his identification of defendant it was brought out the witness made no identification through photographs or lineups.

We find no reversible error assigned and argued and further find defendant was accorded a fair trial.

Affirmed.

All Justices concur except BECKER and RAWLINGS, JJ., who dissent.

BECKER, Justice (dissenting).

I respectfully dissent.

The question considered in Division II is not whether evidence of extra-judicial identification is admissible as an exception to the rule against corroborating a party's own witness. The majority opinion strongly and amply demonstrates such evidence is admissible and defendant does not contest the point. The question is; can the State, in showing such extra-judicial identification in its case in chief, violate our long established rules barring evidence of a defendant's bad character, or reputation, or prior convictions, or prior arrests in its main case? State v. Brown, 100 Iowa 50, 69 N.W. 277; State v. Eaton, 190 Iowa 212, 130 N.W. 195; State v. Underwood, 248 Iowa 443, 80 N.W.2d 730; 1 Wharton's Criminal Evidence, Twelfth Ed., section 232, page 492.[1] The majority notes this prohibition does not apply where the purpose of the evidence is to show identification but we have not applied this exception to the type case we have here.

It might be well to first view the evidence itself. Through some inadvertence the photograph actually used at trial has been lost. The picture and legend on the reverse side has been certified to this court by trial attorneys as an exact duplicate, front and back, of exhibit D. The effectiveness of the exhibit to bring home to the jury the fact that defendant at least had a police record, if not a felony record, needs no elaboration.[2]

---

1. Defendant appellant implicitly concedes the extra-judicial identification exception recognized above but poses the additional problem: "The question thus to be answered is whether evidence of prior crimes can be established to prove identity *in such a manner as was done in the instant case.*" (Emphasis added):

2. Evidence of prior arrests, as distinguished from prior convictions, has always been held inadmissible. There are fewer exceptions to this rule than there are exceptions to th rule against evidence of prior convictions. Cf. State v. Brown, 100 Iowa 50, 54, 69 N.W. 277.

Name Curtis Lee Redding ___ negro ___ male

Birth Date 10-1-47 Hair blk. 6'-0" 170#

Eyes brn. Comp dark Bld med. Scars, None

Charge Delinquency

I. P. C.

POLICE DEPT.
WATERLOO, IOWA

Of the many cases dealing with this general subject, a good short statement of the problem together with a suggestion as to the proper rule is gleaned from two Canadian cases. Rex v. Dean, (1942), 1 Dominion Law Reports, 702, 706, 706, On-

**798**

tario Court of Appeal: "It is argued for appellant that the Crown prevented him having a fair trial by introducing as part of its case in chief this evidence that the accused had been formerly convicted of an offence and had been imprisoned. It is answered for the Crown that whatever may be said about the filing of this exhibit, in the end no harm came of it as appellant became a witness in his own defence, and in the course of his examination-in-chief, being asked by his own counsel whether he had been previously convicted, said he had been convicted twice, once in California and once in Manitoba. It is said further that appellant on cross-examination was properly asked as to these prior convictions and gave some details with respect to them. Appellant's counsel replies to this that the appellant was forced into the witness box by the evidence of prior conviction improperly admitted against him as part of the Crown's case. * * *

"It is not arguable that when the question is whether the prisoner is the person who committed the crime charged, evidence that he is a former convict and that the police have his photograph in their gallery is not prejudicial to the prisoner. Not only does it affect his credibility as a witness, but even if he does not become a witness the knowledge will, in every probability, be weighed in the scales against him. It weakens the presumption of innocence to the benefit of which he is entitled."

This case is followed by Rex v. Watson (1944), 2 D.L.R. 801, 802, 803, (Ontario): " * * * As was pointed out by counsel for the Crown, the police have in their possession photographs other than those of convicted persons, and mere mention of the fact that the photograph of the person on trial was in the hands of the police is no warrant for assuming that he had a criminal record. Reference may be made to R. v. Kingsland (1919), 14 Cr.App.R. 8. It would be improper for counsel for the Crown to endeavour to make a point of the fact that the photograph of the accused

was among the police records. So far as possible that ought not to be disclosed to the jury, and if there is any reason to apprehend the jury may be prejudiced against the accused by reason of some disclosure of the fact that the police have his photograph on their records, it would be well for the trial Judge to warn the jury against allowing their minds to be influenced by that knowledge, to the prejudice of the accused. R. v. Palmer (1914), (10 Cr.App. R. 77). * * *.

"It requires constant watchfulness on the part of trial Judges and Magistrates, and of Crown counsel as well, to see that nothing unfair to an accused person is done, or is stated in evidence, in connection with the use of photographs for purposes of identification. Within proper limits, the use of photographs is not only helpful to the administration of justice, but is often indispensable."

The Canadian cases are quoted because they help put the problem in focus and suggest a reasonable approach. Our own federal courts reach the same conclusion on very similar reasoning.

United States v. Reed, 7 Cir., 376 F.2d 226 (1967), is a case where the photos were not admitted in evidence but were referred to as 'mug shots' during testimony concerning extra-judicial identification. The federal courts said: "We hold that the testimony with respect to the 'mug shot' of Reed taken in prison vitiated his right to be presumed innocent until proven guilty and was prejudicial error. Repeated objections to this testimony were sustained, but the testimony remained. This testimony made the difference between the trial of a man presumptively innocent of any criminal wrongdoing and the trial of a known convict. His right not to take the stand in his own defense was substantially destroyed. His past record could not have been directly shown by the prosecution as part of its case to prove bad character since Reed's character was not in issue. The testimony did this indirectly.

"The characterization of the photographs as 'mug shots' taken in prison had the same effect as the penitentiary notations on photographs and the descriptive testimony concerning them held to be prejudicial in United States v. Harman, 349 F.2d 316, (4th Cir. 1965). In remanding for a new trial, the court in Harman said it doubted that anything the judge might have said could have removed the prejudice created by the pictures and noted that he had not mentioned them in his instructions. Id. at 320." (loc. cit. 376 F.2d at page 228.)

In Castillo v. United States (5 Cir., April 2, 1969). 409 F.2d 762, 764, the same problem arose. The picture from which identification was made was referred to as part of a group of "mug shots" depicting "known users". In reversing the court said: "In addition the characterizations were wholly unnecessary and served no legitimate purpose. The earlier testimony of Bustos had demonstrated how the testimony could be handled, without prejudice to appellant, to achieve the legitimate purpose of coupling seller and photograph as the same person. Appellant's character was not in issue. The chain of proof from visual observation of the seller by the witness, to selection by the witness of a picture as one depicting the seller, to undisputed identification by another of the depicted image as that of a particular person who was then arrested, depended not at all on the source or character of the photograph but upon the witnesses' visual observation of it plus Hambreck's undisputed ascertainment that the picture they selected was of appellant."

The two federal cases just cited deal with testimonial evidence only. There is a good deal of law concerning the admissibility of such "mug shots" as distinguished from mere testimony concerning them. United States v. Harman, 349 F.2d 316 (4th Cir. 1965), is such a case. The court cites 20 Am.Jur., Evidence, section

728, page 608, as stating the general rule: " 'Photographs are admissible in evidence in criminal cases upon the same principles and rules governing their admission in civil cases. However, photographs taken from the "rogues' gallery" collection of photographs, or the files of photographs taken in prison, are generally inadmissible when on their face they are identifiable as such pictures' " [2]. (loc. cit. 349 F.2d at page 322.)

Vaughn v. State, 215 Ind. 142, 19 N.E.2d 239, 241 (1939), is a case where the material on the photograph and card was blocked out and the police or prison picture was then used. The court observed: " * * *. Pictures of criminals showing a front and profile view, with a number displayed on the breast, are common and familiar. If the evidence had been offered for the good-faith purpose of showing that the witness could identify a photograph of the defendant, these pictures might have been cut apart and that portion where the number is displayed cut away. But it is obvious that thus presented they would have no more relevancy or probative force than a kodak picture taken in the court room or in the defendant's home. It may well be doubted whether the jurors remained in ignorance of the fact that the photographs and card had to do with some criminal record of the defendant. It was not proper to prove that the defendant had a criminal record, and what may not be done directly may not be done by indirection or subterfuge. If the photographs had any substantial probative force and furnished any further evidence of the identity of the person who committed the crime than was furnished by the testimony of the witness who identified him, and it was impossible to separate the photographs from the prejudicial matter, a different question would be presented. Since proof of another crime improperly admitted is always treated as prejudicial er-

2. 29 Am.Jur.2d §§ 785, 787, 815, does not carry the same rule, possibly because the cases cited in annotation at 71 A.L.R.2d 451, show a split of authority on the problem.

ror, and, since it cannot be said that this exhibit and the manner in which it was presented was not sufficient to cause a juror of average intelligence to at least strongly suspect that the defendant had a criminal history, we cannot say that the admission of the exhibit was not prejudicial."

Other cases holding use of police or "mug shot" photographs to be prejudicial error are State v. Boyd, 8 Terry 370, 91 A.2d 471; Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509 (1966).

Nearly all of the principal authorities relied upon by the majority do not reach the question we have here. Most of them are authority for the propriety of evidence of extra-judicial identification where the prior identification was by photographs without reference to their source, lineup procedures, identification at preliminary hearing, and the like. It is submitted this is true of People v. Gould, (Traynor, J.), 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865; State v. Childs, 198 Kan. 4, 422 P.2d 898; Colbert v. Commonwealth, Ky., 306 S.W.2d 825, 71 A.L.R.2d 442.

In People v. Gould, supra, the testimony referred to identification by photographs. The source of the photographs was not alluded to in recitation of the testimony and the photographs themselves were not offered in evidence. The case does not mention, much less condone, reference to mug shots or introduction of police photographs into evidence.

State v. Childs, supra, refers to identification of defendant from "police photographs" and "photographs furnished by the police." The term "mug shots" was not used until the officers testified. Objection was immediately made and the officer later responded without using the term "mug shots". As to this portion of the case, which really begins to approach our

problem here, the Kansas Supreme Court said:

"Notwithstanding the procedural shortcomings which normally would preclude review by this court, we have examined the record and are of the opinion the reference to 'mug shots' did not result in prejudicial error under the circumstances narrated. Nothing said herein, however, is to be construed as placing our stamp of approval on this type of testimony, regardless of whether the reference was intentional or inadvertent. We specifically condemn the tactics often employed by overzealous witnesses of injecting clearly incompetent testimony, not otherwise admissible, which implies the accused has a prior criminal record, in an obvious effort to create prejudice in the minds of the jury. Decisions in which the admission of such testimony has been held not to have resulted in prejudicial error must be confined to the specific facts of each case rather than an indication of carte blanche approval of the practice." (loc.cit. 422 P.2d, page 905).

Neither State v. Childs, supra, nor the case on which it is based, State v. Minor, 195 Kan. 539, 407 P.2d 242, involves use of the pictures. I find it exceedingly difficult to accept the Kansas Supreme Court as authority for the proposition that deliberate use of the term "mug shots" of defendant is permissible as part of the extra-judicial identification evidence. Yet this is what the majority seems to imply.

Colbert v. Commonwealth, supra, involved the following situation: "The appellant voices an objection, on another ground, to the testimony concerning identification of the defendant's picture among a group of pictures shown to the victim at the police station. The objection is, that since it is common knowledge (or at least belief) that the 'rogues' galleries' maintained at police stations are composed of photographs of known criminals, the admission of evidence as to the de-

fendant's picture being in such a 'rogues' gallery' was in substance the admission of evidence of another, unrelated crime committed by the defendant. Since we have held that the evidence of identification by photograph was otherwise competent, and since any suggestion from this evidence that the defendant was guilty of other crimes was incidental and remote, we think the evidence was not objectionable on the ground of reference to other possible crimes. See 20 Am.Jur., Evidence, section 311, p. 290; cf. Commonwealth v. Jackson, Ky., 281 S.W.2d 891. In fact, there is authority for the proposition that evidence of other crimes is admissible where it is for the purpose of identification. See 20 Am.Jur. Evidence, sec. 312, p. 292." (loc. cit. 306 S.W.2d page 828, 71 A.L.R.2d pages 447 and 448.)

Two factors are readily apparent: (1) the photographs were not referred to as "mug shots" or "rogues' gallery shots" (defendant had to rely on common knowledge alone), and (2) the reference to the incidental and remote suggestion comes in large part from the fact the jury did not know the nature or source of the photographs. Of course, it is clear the photographs were not used. Again, Colbert v. Commonwealth, supra, supplies little precedent for the problem we have here.

Another authority relied upon by the majority is 4 Wigmore on Evidence, Third Ed., section 1130, page 208. To be sure, Wigmore there says *testimony* of extra-judicial identification ought to be admissible. The majority fails to note the Wigmore text dealing with the use of police photographs. 3 Wigmore on Evidence, Third Ed., section 786(4), pages 162, 163 reads: "In *identifying persons or material objects,* it is of course more effective if the thing to be identified is so placed with others that the witness' selection appears to be unaided. This is particularly important in the identification of an *accused,* where the witness is shown a photograph beforehand. Nevertheless, no general rule has required this— partly because of its frequent impractica-

bility, partly because the lack of such a precaution plainly enough detracts from the value of the testimony, and partly because the witness has usually had so many prior opportunities of private verification that such a public test would often give a false appearance of spontaneous and unaided selection.

"*Distinguish here the use of police photographs at the trial; in that case the fact that the photograph came from the 'rougues' gallery', as shown by marks on the picture amounts to evidence of a prior record of crime, which might be inadmissible on the principles of §§ 193–194a, ante.*" (Emphasis added.)

1 Wigmore, sections 193 to 194(a) deal with Particular Acts to Show the Defendant's Character and notes such evidence is *inadmissible* as primary evidence of defendant's guilt. It is submitted that Wigmore's treatise does not support the result reached here *on the facts of this case* but rather is contra.

The annotation found at 71 A.L.R.2d 449 is in the same category. It cites many cases for admission of testimony of extra-judicial identification but notes real divergence of authority when reference to police photographs, mug shots and rogues' gallery shots became involved. Cf. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, Footnote 5.

Of the cases cited by the majority only a few are cases where the "mug shots" were actually allowed in evidence and the procedure was held not to be reversible error. United States v. Robinson, 7 Cir., 406 F.2d 64, 67 (1969) did not involve admissibility of the photographs but only reference to them. Even so the court held: "Thus, although we believe the terminology used by the Government was ill-advised and might call for reversal in some circumstances, such as in *Reed,* we hold that in the instant case it did not constitute reversible error."

In Commonwealth v. McLellan, (1966), 351 Mass. 335, 220 N.E.2d 819, the meager-

ness of the record largely accounted for the result.

People v. Purnell, Ill.App., 245 N.E.2d 635 and People v. Maffioli, 406 Ill. 315, 94 N.E. 2d 191, are the cases cited by the majority that are comparable to this case on their facts and support the result reached. People v. Maffioli, supra, states: "He first complains that the admission of the photographs from which he was originally identified, each bearing the legend, 'Police Dept., Rockford, Ill. 6874 John Maffioli 8–26–49' was prejudicial because the photographs constituted evidence of other crimes. The photographs were not received in evidence for the purpose of showing an arrest for another offense, but were properly admitted as the photographs from which defendant was first identified by eyewitnesses to the crime charged. In addition, the photographs were relevant to the material issue of defendant's style of haircut and general appearance in August, 1949. * * *." (loc. cit. 94 N.E.2d, page 193). People v. Purnell relies on People v. Maffioli; neither gives an adequate reason for complete abandonment of the prohibition against showing bad character as substantive evidence.

The rule, ignored by the Illinois courts (and by this court) which creates the conflict here explored, is well put in State v. Myrick, 181 Kan. 1056, 317 P.2d 485: "* * * All evidence, to be admissible, must be relevant, and the general rules is based upon the principle that evidence of an unrelated prior conviction is irrelevant to prove the offense charged, and has a tendency to prejudice the minds of the jury against the accused and to predispose them to a belief in his guilt. Further, that evidence of a prior conviction, when offered in the state's case in chief, violates the rule of policy which forbids the state initially to attack the character of the accused, and that which prohibits proof of bad character by particular acts (1 Wharton's Criminal Evidence, 12th ed. § 232, p. 492). The rule against the admissibility of such evidence should be strictly enforced (State v. Frizell, supra [132 Kan. 261, 295 P. 658], Syl. ¶1)."

In State v. Tapia, 79 N.M. 344, 443 P.2d 514, the pictures were neither offered nor admitted and the decision turned on failure to raise the objection at trial.

Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, does not reach the problem we have here: (1) the photographs there involved were snapshots of Andrews and Simmons obtained from Andrews' sister by the F.B.I. (2) no photographs were offered or admitted in evidence, (3) the evidence was not offered in the main case but on rebuttal. The issues decided in Simmons are simply not relevant to our problem.

I do not suggest the following points constitute a rule, but for me at least, the better considered cases seem to make the following points: (1) Testimony of extrajudicial identification may, if otherwise admissible, be used to corroborate a witness (this is an exception to the general rule barring such corroborative evidence); (2) such corroborative evidence may not, by oral reference or use of the pictures themselves, refer to "mug shots", "rogues' gallery" or other terms which make it evident defendant has either an arrest or felony record; (3) ordinarily the photographs are not necessary in any event since the issue is whether there was, in fact, a prior identification from a photograph and the impermissible characterization of defendant as a person with a police record by indirection, far outweighs the benefit of the use of the photograph itself; (4) if, under particular circumstances, use of such evidence results in the implication of prior arrest or conviction, a limiting instruction should be given.

These conclusions seem to be necessary in order to allow the State a fair range of identification evidence and, at the same time, honor our long-standing rule against evidence of bad character as substantive proof of crime.

Justice Fontron has admirably analyzed this matter at length in State ʼv. Minor, supra. He put the whole matter quite succinctly in his short dissent in State v. Childs, 198 Kan. 4, 422 P.2d 898, 906. The entire dissent reads: "For reasons appearing in my dissenting opinion in State v. Minor, 195 Kan. 539, 407 P.2d 242, I am unable to agree with the majority opinion.

"I am still concerned over the admission of evidence relating to 'mug shots' and police photographs at the trial of an accused where his character has not been placed in issue.

"Such a practice, in my judgment, necessarily impugns the fairness of the proceedings and should not be tolerated."

We have not had this matter before us. The majority opinion as now written allows unrestricted use of, and reference to, mug shots despite our public policy against the necessary implication of such evidence. I would reverse.

RAWLINGS, J., concurs.